OPINION OF THE COURT
Meyer, J.
When, as part of a plan to dispose of the assets of a limited partnership, all of the general and limited partners sell their interests in the partnership to a corporation in exchange for stock of the purchaser’s parent corporation, have the limited partners received a return of their partnership capital within the meaning of subdivision (4) of section 106 of the Partnership Law? If the answer to that question is affirmative, may a judgment creditor of the limited partnership who became a creditor prior to such *560 sale recover from the former limited partners, to the extent of their respective capital contributions thus withdrawn, without relitigating the cause of action underlying the judgment against the partnership, even though the limited partners were not party to the action in which the judgment was obtained? The Appellate Division, reversing Special Term, answered both questions in the affirmative and directed entry of summary judgment against the appealing limited partners in the amount of the contribution of each, with interest. There should be an affirmance.
Presented by this appeal are not only the two issues concerning construction of the Partnership Law and the binding effect of the prior judgment outlined above, but subsidiary questions concerning whether plaintiff has failed to exhaust available remedies and whether he is barred by limitations and laches. The subsidiary questions are sufficiently answered in the Appellate Division opinion and will not be further considered here. As to the Partnership Law, six of us agree that the strong policy enunciated by section 106 permitting a creditor who was such when a limited partner’s capital was returned to him to recover from the limited partner to the extent of the capital returned, with interest, even though return of the capital was entirely proper, mandates the conclusion that a transaction or series of transactions in which all general and limited partners dispose of their interests in the limited partnership leaving a creditor unpaid constitutes a return of capital notwithstanding that in form it is the sale of the limited partners’ interests. On the question whether the judgment against the partnership binds the limited partners, five of us are agreed that it does, not on any theory of collateral estoppel but because the partnership, in whose right the creditor sues the limited partners to recover partnership assets (the capital, though rightfully returned), has already fully litigated its obligation to the creditor as such.
I
The facts upon which turn determination of the issues stated above are rather complex. Black Watch Farms was organized in 1962 as a limited partnership to manage and *561 breed purebred Angus cattle as a tax shelter. Its principal general partner was BW Farms, Inc. (“BWF”), a New York corporation, whose president and principal shareholder, Jack Dick, was also Black Watch’s general manager. BWF was also a limited partner in Black Watch, owning 14% of the limited partnership interests. The other 86% of the $1,000,000 capital contributed to the partnership came from tax shelter investors who became limited partners.
In March, 1968, Black Watch entered into an exclusive agreement with plaintiff Whitley to pay him a finder’s fee if a sale of its assets were concluded with any of five prospects, including a corporation now known as Bermec Corporation. However, not long thereafter, having unsuccessfully attempted to persuade Whitley to relinquish his exclusive rights, Black Watch instructed him to cease all further contact with Bermec. In May, 1968, Bermec announced its intention to acquire Black Watch. On May 23, 1968, plaintiff Whitley’s attorneys informed both Black Watch and Bermec of his claim for a finder’s fee on the then proposed transaction. On June 21,1968, an agreement of sale was executed by BWF, Jack Dick, Bermec and Black Watch Farms, Inc. (“INC”), a wholly owned subsidiary of Bermec, pursuant to which BWF sold to INC for Bermec stock valued at $20,500,000 all of its assets, including its general and limited partnership interests in Black Watch. The agreement provided that INC was to be substituted for BWF as general partner of Black Watch and obligated Bermec itself to offer to purchase, for an aggregate of $10,500,000 in cash or Bermec stock less a finder’s fee to a company other than plaintiff, from each of the other Black Watch limited partners, the entire 86% of limited partnership interests in the same proportion as the individual partners’ interest in Black Watch bore to the 86% interest held by the limited partners other than BWF.
The offer was made by a prospectus which acknowledged that Bermec was obligated by the June 21, 1968 agreement to make the offer, stated that Bermec opted to offer stock rather than cash, set forth the amount of the finder’s fee to be deducted, and fixed an expiration date of January 7, 1969. All of the limited partners of Black Watch accepted *562 the exchange offer. INC thus became the sole general and sole limited partner of Black Watch and distributed to itself all of Black Watch’s assets.
On August 21, 1968, no response having been received to his attorneys’ letter, Whitley began an action against both Black Watch and BWF, which resulted, some eight years later, after entry and vacation of two earlier judgments, in judgment against Black Watch and BWF in the amount of $1,552,034.50. On November 29,1977, the appeal by Black Watch and BWF from that judgment was dismissed for failure of prosecution. In the intervening years, however, Black Watch had been dissolved and its limited partnership certificate had been canceled on August 15, 1969, BWF had distributed its only asset (the Bermec stock received by it), Jack Dick had died, and Bermec and INC had both gone bankrupt. Whitley has realized on his judgment, therefore, only $20,983 paid to him as a creditor in the INC bankruptcy.
In April, 1978, Whitley began the action which is the basis of this appeal against the available former limited partners (other than BWF) of Black Watch. His complaint contained allegations establishing that his finder’s fee claim was an outstanding obligation of the limited partnership when the interests of the limited partners were acquired by Bermec as well as when the June 21, 1968 agreement was signed. By separate motions plaintiff moved for summary judgment against Daniel T. Alagna, Fania Friedman and Phemie Goldman (the “Alagna Group”). They and certain other defendants cross-moved for leave to amend their answers and all of the defendants cross-moved for summary judgment. Special Term denied plaintiff’s motions for summary judgment and granted defendants’ cross motions dismissing the complaint. It held that absent a showing of fraud the transfer of defendants’ limited partnership interests could not be equated with a return of capital to defendants. The Appellate Division reversed, granted summary judgment to plaintiff against the Alagna Group, and denied the cross motion of the other defendants for judgment dismissing the complaint. This appeal by the Alagna Group defendants followed.
*563 II
Subdivision (4) of section 106 of the Partnership Law provides that: “When a contributor has rightfully received the return in whole or in part of the capital of his contribution, he is nevertheless liable to the partnership for any sum, not in excess of such return with interest, necessary to discharge its liabilities to all creditors who extended credit or whose claims arose before such return.” In determining the meaning of the words “return * * * of the capital of his contribution” [1] one must look not only to those words but to the purpose of the provision and to its context as well (McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 96, 97). That the purpose of the subdivision is the protection of creditors is crystal clear not only from the explicit reference to “creditors who extended credit or whose claims arose before such return” but also from the imposition of liability under its provision even though the contributor has “rightfully received the return.” It follows that primary in the determination whether a particular transaction constitutes a return of capital is not the limited partner’s purpose or intent or how the transaction is structured but its effect upon partnership creditors.
On the basis of that overriding purpose we and other courts have held limited partners liable under subdivision (4) of section 106 notwithstanding the absence of fraud, the fact that property other than cash is received by the limited partner or the fact that the transaction takes the form of a sale of the limited partners’ interests to a third person, rather than a distribution by the partnership itself. Thus, in Kittredge v Langley (252 NY 405)[2] we held that even though the assets remaining with the partnership at *564 fair valuation were more than enough to discharge its liabilities to creditors who were such at the time a limited partner received back his contribution, the limited partner remained liable to the creditors. Though decided under preexisting law, the opinion in that case, by Chief Judge Cardozo, analyzed the Uniform Limited Partnership Act provisions which had been enacted after the repayment there in issue. In that opinion he noted that the provisions of article 8 of the Partnership Law “are declaratory of existing law” (252 NY, at p 421), and held that, notwithstanding the seemingly contrary language of section 105 (subd [1], par [a]) of the Partnership Law,[3] a limited partner's “contribution, like the capital of a corporation and to a similar extent,[4] is to be treated as a trust fund for the discharge of liabilities * * * He can gain nothing for himself out of the fund so created, except in subordination to the creditors, until the debts have been extinguished” (252 NY, at p 419). The “risk of change” in the situation of the partnership after such a distribution, he reasoned, is upon the limited partner rather than the creditors (252 NY, at p 420). Support for those conclusions was found in the priority for creditors over limited partners declared in section 112 of the Partnership Law (252 NY, at p 421).[5]
An analogous holding is to be found in Beers v Reynolds (11 NY 97), in which the limited partner sold his interest *565 in the partnership to the general partner taking back a chattel mortgage on both partnership property and property of the general partner. The Trial Judge charged the jury that the limited partner was liable as a general partner (the result under the then existing statute when the partnership continued business after an alteration of its capital) irrespective of any design to defraud or injure creditors of the firm and without regard to the motives be-bind the sale of the limited partner’s interest or the intent with which it was made (accord Coffin’s Appeal, 106 Pa 280, 287).
Receipt by the limited partner of property (here Bermec stock) rather than cash does not change the result. While subdivision (3) of section 105 of the Partnership Law restricts a limited partner to receipt of cash for his contribution unless the partnership certificate states otherwise or all members consent, that provision has no bearing upon the interpretation of subdivision (4) of section 106, intended as it is to protect creditors. We have, moreover, held that a withdrawal occurred though the vehicle was not cash but the taking of title to partnership property in the name of both general and special partners (Madison County Bank v Gould, 5 Hill 309).
A closer question is whether the statute covers only a transfer, whether of cash or property, which comes from the partnership itself or includes as well a transaction which takes the form of a sale of the partnership interest and in which the consideration moves from a third person. While there are no New York cases in point, both Neal v United States (195 F2d 336) and Johns v Jaeb (518 SW2d 857 [Tex]) have held that it does. The Neal decision is of particular interest because in reaching its conclusion the Fifth Circuit Court of Appeals relied upon our Kittredge v Langley decision, and because it involved a factual situation akin to that of the present case.
In Neal the United States War Assets Administration had sold a lathe to a limited partnership composed of Neal and Nauts as special partners and Derrick as the general partner. The partnership being in need of new capital which Neil and Nauts declined to provide, Derrick formed a cor *566 poration which was to continue the business and sold interests in it in return for corporate stock. Derrick then used the cash thus obtained, plus his own personal assets and his own promissory notes, to pay out special partners Neal and Nauts, but the creditors, including the United States, received nothing. The court held the special partners liable, noting that the transaction was recorded on the partnership books as a return of capital and “taken as a whole, was simply a device to enable the special partners to withdraw their capital without first satisfying their creditors”, that “the court will look through form to substance” (195 F2d, at p 337), and that “The fact that the money was secured outside the partnership and followed an indirect route to the pockets of Neal and Nauts will not obscure the real purpose of the transaction, which was to preferentially return to Neal and Nauts their original capital investment in the partnership, without first satisfying partnership creditors, contrary to Art. 6128 of Vernon’s Texas Civil Statutes” (195 F2d, at p 338).[6]
Johns v Jaeb, supra, while not as closely in point, is of interest for its construction of the statute in question. The action was to recover penalties for usury. The issue was whether funds advanced by defendant to plaintiff were a loan or a contribution as limited partner to a limited partnership formed by plaintiff and defendant in which plaintiff was the general partner. Defendant’s contribution to the partnership was $5,000 and his share of the profits after a salary to plaintiff of not more than $1,000 a month was 99%. At the same time plaintiff agreed to purchase defendant’s partnership interest for $6,500 and gave a promissory note in that amount, payable in six monthly installments without interest, beginning one month thereafter. The Court of Civil Appeals held (518 SW2d, at p 860): “The difficulty of fitting this transaction into the *567 limited partnership mold is demonstrated by its failure to comply with the Uniform Limited Partnership Act, Tex. Rev.Civ.Stat.Ann. art. 6132a (Vernon 1970). Section 17 of that Act provides that a limited partner shall not receive from a general partner any part of his contribution until all liabilties of the partnership, except liabilities to partners on account of their contributions, have been paid or sufficient property of the partnership remains to pay them. Here the general partner was unconditionally obligated to purchase the interest of the limited partner, and thus repay his contribution, in six monthly installments, regardless of whether the partnership could pay its obligations. This express prohibition of the Act may not be evaded by the simple device of labeling the transaction a sale of the limited partner’s interest.” (Emphasis supplied.)
Against the background of the strong statutory purpose to protect existing creditors and the cases analyzed above which, though not squarely in point, uniformly further the purpose of favoring such creditors over limited partners, we turn to analysis of the transactions underlying defendants’ receipt of Bermec stock for their limited partnership interest. That the ultimate purpose of the transactions was the termination of the business of Black Watch, the limited partnership of which defendants were members, is evidenced by plaintiff’s employment by Black Watch to “assist * * * in the sale of its assets” to named possible purchasers, including Bermec. The agreement of sale ultimately negotiated with Bermec provided for its immediate acquisition of BWF’s 57 % interest as a general and a limited partner in Black Watch (substantially all of BWF’s assets), but also obligated Bermec to offer to purchase from the remaining limited partners their interests for $10,500,000 in cash or stock. Since that sum equalled approximately $118,000 for each $10,000 unit of initial investment by the limited partners in Black Watch it was a foregone conclusion that the remaining limited partners would, as they all did, accept the exchange offer when made. Indeed, under article XVI of the limited partnership agreement, the general partner had the right, with the approval of only 51% of the limited partners, to cause the partnership to transfer *568 its assets to a corporation, dissolve and distribute the stock received, in just such a series of transactions as in fact occurred. Though the actual distribution to limited partners was not completed until January 7,1969 and BWF was not in fact dissolved until August 15, 1969, there was, therefore, never any question that those steps would follow.
Notice of plaintiff’s claim was given to Black Watch prior to the execution of the contract, so it is clear that his claim arose before the limited partners received Bermec stock as a result of their acceptance of the offer,[7] and plaintiff’s moving papers alleged and defendants have not denied that his is the only claim against Black Watch remaining unpaid. The end result of the transactions, therefore, was that the general and limited partners of Black Watch, none of whom retained any connection with Black Watch, have received the entire fair market value of the partnership assets, to the exclusion of its creditor, plaintiff.
Bearing in mind the purpose of the statutory provision in question to protect creditors even when a limited partner has rightfully received a return of his capital and looking to the effect of the transactions rather than to the form, we conclude that they resulted in a return to defendants of their capital within the meaning of subdivision (4) of section 106 and that, therefore, defendants are responsible to plaintiff to the extent of the capital contribution, thus withdrawn, plus interest.
Defendants and Judge Fuchsberg, dissenting, argue that creditors have no interest in the identity of a limited partner and that the statute should be liberally construed to protect limited partnership investors, who are intended to have the same limited liability that a corporate shareholder does. They contend further that there was no reduction in the assets of the limited partnership, nor any transfer of property from the partnership or from the general partner, that the limited partners took no part in the negotiations, and that the inevitable result of affirmance by us will be *569 severely to limit use of limited partnerships since the transferability of limited partnership interests provided for in section 108 of the Partnership Law, will, as a practical matter, be impaired.
The liberal construction argument overlooks the statutory declaration in subdivision (7) of section 108 of the Partnership Law that transfer of a limited partner’s interest does not affect the transferring partner’s liability under section 106 of the same law, and the differences between the latter provision and section 629 of the Business Corporation Law. The declaration in subdivision (7) of section 108 seriously undermines, if it does not eradicate, the suggestion that a limited partner is immunized from the claim of an unpaid existing creditor simply because he took no part in negotiating the transactions and the return of his capital constitutes part of the consideration for the transfer of his partnership interest. As for the Business Corporation Law argument, there is a substantial (and here overriding) difference between its provisions which make liability turn on the solvency of the corporation at the time the stockholder transfers his shares and section 106 which continues a limited partner’s liability notwithstanding the partnership’s solvency at the time and the fact that the capital was “rightfully” returned.
Moreover, to the extent defendants rely upon Crehan v Megargel (234 NY 67, 80) and White v Eiseman (134 NY 101, 103), their argument ignores the facts that both cases antedate Kittredge and that both are clearly distinguishable. At issue in Crehan was whether a person who contributed to a trust which became a special partner could himself be held as a special partner. We concluded he could not, observing that a creditor had no direct interest in the identity of the partner “so long as he contributes his capital and observes all of the requirements of the statute” (emphasis supplied), which as the statute presently stands includes remaining liable to existing creditors when capital is withdrawn, even though rightfully withdrawn. Involved in White was whether a contribution made by a check certified before the partnership papers were filed was a contribution in “cash” as required by the statute. Overruling the *570 contention that the special partners were liable as general partners, we held that, looking to substance rather than form, there had been substantial compliance with the statute.
The other contentions advanced are no more persuasive. The clear contemplation of the original agreement and its ultimate effect was the transfer of all Black Watch assets to INC, the Bermec subsidiary newly formed for that purpose, effectively reducing, unless a then existing creditor can succeed in an action such as this, the assets available to creditors. Nor should the sale of individual limited partnership interests be adversely affected by our holding in this case, predicated as it is upon the structuring of the transaction so as to result inevitably in the transfer of all limited partnership interests.
Ill
The binding effect in this action of the judgment holding the partnership liable to plantiff is likewise a function of the statute. Subdivision (4) of section 106 makes a limited partner who has received the return of his capital “nevertheless liable to the partnership for any sum * * * necessary to discharge its liabilities to all creditors * * * whose claims arose before such return” (emphasis supplied). As we held in Kittredge v Langley (252 NY 405, 420, supra), “The equity thereby established in favor of the partnership is one to which creditors succeed.” Plaintiff brings this action, therefore, not as a creditor seeking to hold a third person on his agreement guaranteeing partnership liabilities, but in the right of the partnership itself to recover the funds necessary to discharge its liability to plaintiff, a liability which has already been established by judgment. Were the action by the partnership rather than plaintiff, the limited partner could not defend on the ground that though the partnership’s liability to the creditor had been finally determined by judgment, it was in fact not liable to the creditor, for that would defeat the purpose of the statute. No more so can he be permitted to defend on such a ground when the creditor, as subrogee, sues in the right of the partnership.
*571 What a limited partner will be permitted to contest in an action by a partnership against which a judgment establishing its liability to a creditor has been obtained is only whether he is in fact a limited partner, whether he received a return of capital, whether the judgment creditor was one whose claim arose before that return, and whether the amount sought by the partnership as return of capital was necessary to discharge the partnership liability (that is, whether the partnership had other means for discharging its liability). Only if the partnership’s liability to its creditor had not been determined by final judgment would a limited partner be at liberty to contest that liability when sued by the partnership, and no reason appears for holding otherwise when the action is by the creditor as successor in interest to the partnership.
The fallacy in Judge Gabrielli’s dissent on this question is in its suggestions that (at p 573) defendants’ “status as debtors' of the limited partnership is premised solely upon the proper resolution of the issues” presented in the prior lawsuit and that (at p 576) “the very existence of defendants’ obligation to the limited partnership turns upon the validity of plaintiff’s claim against the limited partnership.” [8] The partnership’s liability to plaintiff having been determined in an action in which the Special Term Judge found that the partnership had full opportunity to litigate the issues and did so fully and fairly, that liability is no longer open to question in any court. Like the stockholders of a corporation, limited partners are not proper parties to an action against the partnership unless the action is brought to enforce the limited partner’s liability to the partnership (Partnership Law, § 115). Like corporate shareholders, limited partners acquire their interests subject to the provisions of subdivision (.4) of section 106, know that by reason of that section they will be made to repay any capital returned if necessary to pay a partner *572 ship liability and are bound when the issue of liability has been previously litigated by the partnership (Patch Mfg. Co. v Capeless, 79 Vt 1, 8, 11; see Pope v Heckscher, 266 NY 114). Nor is there any due process infirmity in so holding (ibid.; Christopher v Brusselback, 302 US 500; Selig v Hamilton, 234 US 652, 662; see Hood v Guaranty Trust Co., 270 NY 17; Gottlieb, Res Judicata and Collateral Estoppel In The Law Of Partnership, 65 Cal L Rev 863, 881-885).
Furthermore, neither the Restatement comments referred to in the dissent nor Kittredge v Langley (supra), are to the contrary. The suggestion in Comment b to section 109 of the Restatement Second of Judgments (Tent Draft No. 4) that limited partners be treated as general partners who have not been served is, of course, correct with respect to most actions against the partnership but makes no reference to, and quite obviously was not written with respect to, the special situation created by section 106 of the Partnership Law. A further basis for distinction is that returned capital can quite properly be considered partnership property in possession of the limited partners to the extent needed to discharge plaintiff’s judgment against the partnership, and thus within Comment a to section 109 of the Restatement.
Nor is Kittredge authority for the contrary position. The basis for defendants’ argument that it is, is the statement (252 NY, at p 412) that “plaintiff might have been required, if the defendant had so chosen, to prove the debt anew without reference to the judgment.” It is not necessary to discuss at length the full history of the Kittredge litigation, which was before this court five different times (234 NY 501, 236 NY 375, 244 NY 168, 244 NY 182, 252 NY 405), to show that it is distinguishable on its facts. Though the special partner was joined in the original action, which was in tort not contract, the complaint was dismissed as to him because he was a special partner (252 NY, at p 409). The general partners Grannis and Lawrence were named as defendants, but only Lawrence was served, and in view of the nature of the action he appeared only as an individual and not in defense of Grannis’ interests. The judgment against the joint property of the firm was, therefore, *573 modified at Grannis’ request to strike his name from it. The effect was that the original judgment was binding only upon Lawrence and neither upon any other partner, nor under then existing law upon the joint property of the partnership (Kittredge v Grannis, 244 NY 182, 194; Kittredge v Langley, 252 NY 405, 413), for when the Kittredge litigation was begun in 1914 partnerships were not regarded for purposes of suit as entities separate from the individual partners (see, generally, Gottlieb, op. cit., 65 Cal L Rev 863). Here plaintiff does have a judgment against the partnership and proceeds against defendants by way of subrogation to the right of the partnership against them.
For the foregoing reasons, plaintiff was entitled to summary judgment against the Alagna defendants and to denial of the cross motion of the other defendants for summary judgment. The order of the Appellate Division should, therefore, be affirmed, with costs.

. Section 106 of the Partnership Law is identical with section 17 of the Uniform Limited Partnership Act. The 1976 revision of that act deals in section 608 (6 ULA [1979 Supp], p 136) with the liability of a limited partner upon return of his contribution. Subdivision (c) of section 608 defines when a partner receives a return of his contribution and subdivision (a), which is derived from subdivision 4 of section 17 of the prior act, limits liability when return is not wrongful to a period of one year after return. However, the 1976 revision has not been adopted in New York (see 1980 Report of NY Law Rev Comm [Legis Doc No. 65], p 23), and therefore has no bearing on the instant case.

. Kittredge is annotated in 67 ALR 1096.

. “§105. Withdrawal or reduction of limited partner’s contribution
“(1) A limited partner shall not receive from a general partner or out of partnership property any part of his contribution until (a) All liabilities of the partnership, except liabilities to general partners and to limited partners on account of their contributions, have been paid or there remains property of the partnership sufficient to pay them.” (Emphasis supplied.)

. The words “to a similar extent” cannot be read literally for subdivision (4) of section 106 of the Partnership Law continues liability of a limited partner to all creditors who are such at the time his capital is returned without regard to solvency of the partnership whereas the corporation laws in existence when Kittredge was written imposed liability upon a stockholder who received corporate property after the corporation had refused to pay any obligation or when the corporation was insolvent or its insolvency was imminent (former Stock Corporation Law, § 15), or even if not insolvent, for wage claims (former Stock Corporation Law, §71).

. Additional support also exists in the provision of subdivision (7) of section 108 that a limited partner who assigns his interest is not released from liability to the partnership under section 106 by the substitution of his assignee as limited partner.

. Defendants argue that Neal is distinguishable because the statute referred to by the court dealt with transfers by the partnership while insolvent or in contemplation of insolvency, which was the case in Neal. However, the result would have been the same had the partnership not been insolvent since the Texas Limited Partnership Law (arts 6124, 6126) proscribed, without regard to insolvency, withdrawal of, or reduction of, the capital of a special partner.

. That defendants were not given notice is immaterial. The subdivision contains no such requirement and in any event notice to the partnership is binding on the limited partners, whether they had personal knowledge or not (cf. Wisner v Ocumpaugh, 71 NY 113, 116).

. A further fallacy is the equation (at p 577) of a stockholder’s right to litigate the.fact of his status as stockholder with a limited partner’s right to litigate his status as debtor to the partnership. The right of a limited partner paralleling the stockholder’s right to litigate his status as stockholder is the limited partner’s right to litigate his status as a limited partner.