In re THE SECURITIES GROUP 1980, Debtor.

Louis LOWIN, Trustee of the Estate of The Securities Group 1980, Plaintiff,

v.

DAYTON SECURITIES ASSOCIATES, Defendant and Third Party Plaintiff,

v.

Louis LOWIN, Chapter 11 Trustee of The Securities Groups, Counterclaim Defendant,

and

Kenneth T. Kaltman, et al., Third Party Defendants.

Bankruptcy No. 84–431–BK–J–GP. Adv. No. 85–214.

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

March 11, 1988.

Stewart E. Bland, Louisville, Ky.

Johathan A. Chandler, Atlanta, Ga.

Richard P. Swanson, New York City.

Glenn E. Rice, New York City.

Philip A. Kantor, Mangone & Schnapp, New York City.

Gruen, Muskin & Thau, New York City.

James J. Gross, Washington, D.C.

David B. Newman, New York City.

Paul R. Hejmanowski, Las Vegas, Nev.

Daniel P. Levitt, New York City.

Birch, Horton, Bittner, Pestinger & Anderson, Washington, D.C.

Philip Tierney, McLean, Va.

Jonathan R. Mook, Alexandria, Va.

John B. Macdonald, Jacksonville, Fla.

Lane & Mittendorf, New York City.

Gregory C. Horn, Los Angeles, Cal.

Guy R. Fairstein, New York City.

Christopher Sanger, Washington, D.C.

George E. Ridge, Jacksonville, Fla.

Robert L. Young, Orlando, Fla.

Stephen L. Black, Cincinnati, Ohio.

Lawrence L. Pedley, Louisville, Ky.

Johathan H. Alden, Tulsa, Okl.

Glenn E. Stern, Monrovia, Cal.

George L. Cass, Pittsburgh, Pa.

David Dunn, New York City.

Norman S. Buckvar, Cleveland, Ohio.

Richard M. Estes, New York City.

John R. Serpico, Brooklyn, N.Y.

William E. Kuntz, Jacksonville, Fla.

Busch, Grafman & VonDreusche, Bala-Cynwyd, Pa.

Ira Rubin, Goldman, Rubin & Shapiro, Dayton, Ohio.

Finley, Kumble, Wagner, Heine, Underberg & Manley, New York City.

Melinda Holiday, Sutherland, Asbil, Brennan, Atlanta, Ga.

Sheldon Lowe, Botein, Hays & Sklar, New York City.

## MEMORANDUM OPINION

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding is before the Court on plaintiff's motion for partial summary judgment as to the first cause of action against Dayton Securities Associates on the limited issue of liability for the return of all consideration received by the defendant in connection with the sale of its partnership interests. A hearing on the motion was held February 11, 1988, at the conclusion of which the Court allowed all interested parties to submit written memoranda of law. Upon consideration, the Court will hold in favor of plaintiff and grant partial summary judgment as to the first cause of action.

### Background

This case arises out of defendant's investment in The Securities Group 1980 ("TSG80" or the "partnership"). TSG80 was one of three New York limited partnerships formed by Charles Agee Atkins ("Atkins"). The Securities Groups ("Groups") was a general partnership comprised of TSG80 and two other limited partnerships, The Securities Group ("TSG") and The Monetary Group ("TMG"). Among other things, Groups was a broker-dealer that invested in United States government securities. The four partnerships are now in bankruptcy and the plaintiff, Louis Lowin, is the Post–Confirmation Administrator and former Chapter 11 Trustee of all four bankruptcy estates.

The parties do not dispute that defendant, Dayton Securities Associates, is a general partnership formed by Allan Rinzler, a financial advisor with offices in Dayton, Ohio, for the purpose of investing in the partnership. Defendant purchased an interest in TSG80 and, in 1980, made an initial capital contribution in the sum of $1,156,500. On October 30, 1981, defendant made a second capital contribution in the amount of $4,443,000 for a total capital contribution of $5,599,500.00.

Groups began its operations as a "joint operating account" which coordinated the activities of TSG and TMG prior to the formation of TSG80. After its formation, TSG80's activities were also coordinated through Groups. Atkins and others who acted as the management of Groups were also responsible as general partners for the management of the limited partnerships and ran their operations out of New York City. Defendant has conceded that, as the general partners of Groups, the limited partnerships are jointly liable for the debts incurred by Groups. *See* New York Partnership Law, Section 26(2) [McKinney's Partnership Law, Book 38, Article 3, 1948],

which provides that all partners are jointly liable for the debts and obligations of a partnership.

Sometime prior to autumn of 1982, it became apparent that changes in the tax laws would no longer permit broker-dealers such as Groups to continue to defer income from year to year as had previously been the practice. These changes in turn translated into adverse tax consequences for the limited partners, as they would now be required to recognize theretofore unrecognized income of the partnership and pay taxes on that income without receiving equivalent cash distributions in an amount adequate to pay the taxes.

To offset these potential tax liabilities, Atkins began to arrange a sale of the limited partners' interests. One of the options explored was the merger of the limited partnership with an entity having large tax loss carryovers. However, by mid-1982, the managers settled upon the idea of selling the limited partners' interests to a new partnership to be comprised of Group's managing partners. Consequently, a new partnership was formed and named TSG Partners.

On November 15, 1982, TSG Partners made a tender offer for all the interests of the limited partners in the three limited partnerships. TSG Partners offered as consideration for these interests an amount equal to 105% of the net asset value of the limited partnerships as of September 30, 1982.

On or about December 7, 1982, defendant accepted the tender offer. Thereafter, a sale of defendant's interest to TSG Partners was consummated and on April 1, 1983, defendant received cash and a promissory note in the amount of $5,019,575.00.

TSG Partners subsequently became insolvent and filed a petition under Chapter 11, Title 11, of the United States Code. Its chief general partner, Charles Agee Atkins, also filed a Chapter 11 petition.

Subsequent to defendant's purchase of its limited partnership interest and contribution of capital, the partnership and Groups were indebted to various creditors. Many of those creditors were unpaid at the

time defendant received a return of its capital contributions through the sale of its limited partner interest to TSG Partners and remain unpaid today.

Plaintiff, as Post–Confirmation Administrator, has filed this and other related adversary proceedings seeking to recover for the bankruptcy estates a return of the limited partners' capital contributions which they received under the terms of the tender offer and, secondly, to compel the limited partners to honor their commitment to make additional capital contributions to the limited partnerships. Although the Post–Confirmation Administrator has settled a number of these related proceedings, the action against Dayton Securities Associates remains pending. This proceeding is now before the Court upon the plaintiff's motion for partial summary judgment as to first cause of action.

### Scope of Plaintiff's Motion

In his amended complaint, plaintiff has asserted two causes of action. The first is based primarily upon § 106(4) of the New York Limited Partnership Law [McKinney's Partnership Law, Book 38, Article 8] (the "Act"). Plaintiff contends that this statute creates an obligation on the part of defendant to return to the partnership the consideration it received in exchange for its partnership interest under the terms of the tender offer made by TSG Partners. Section 106(4) provides:

When a creditor has rightfully received the return in whole or in part of the capital of his contribution, he is nevertheless liable to the partnership for any sum, not in excess of such return with interest, necessary to discharge its liabilities to all creditors who extended credit or whose claims arose before such return.

In addition to arguing that defendant is liable for the consideration received in the form of cash and notes from TSG Partners, plaintiff also claims that § 106(4) dictates that defendant honor its commitment to the partnership to contribute additional capital

to the extent necessary to pay existing creditors of the partnership.

The second cause of action which is not part of the motion is based upon the Certificate of Limited Partnership to which defendant subscribed when it purchased its partnership interest. Plaintiff argues that under its terms, the defendant is obligated to make additional capital contributions up to three times its initial capital commitment if necessary to pay the recourse obligations of the partnership.

In his motion for summary judgment, plaintiff seeks a determination that defendant is liable under the first cause of action in an amount, not to exceed the shortfall in partnership obligations, equal to the cash and principal amount of the note received in the tender offer, plus interest. Since the amount of creditors' claims against the partnership has not been finally determined, plaintiff's motion is limited solely to the issue of liability. The issues of additional capital contributions, recourse obligations and the actual amount of defendant's liability are not presently before the Court.

### Discussion

Plaintiff's argument is premised upon the conclusion that the sale by defendant of its partnership interest amounted to a "return of capital" within the meaning of New York Partnership Law § 106(4) and that defendant must now return for the benefit of unpaid creditors the consideration it received in the tender offer.

█ Thus, the first issue to be addressed is whether the sale of a limited partnership interest amounts to a "return of capital." *Whitley v. Klauber*, 51 N.Y.2d 555, 435 N.Y.S.2d 568, 416 N.E.2d 569 (1980), appears to be a case on point. There, the New York Court of Appeals held that, for purposes of § 106(4), the sale of a partnership interest pursuant to a tender offer does indeed amount to a return of capital. Said the Court:

... As to the Partnership Law, six of us agree that the strong policy enunciated by section 106 permitting a creditor who was such when a limited partner's capital

was returned to him to recover from the limited partner to the extent of the capital returned, with interest, even though return of the capital was entirely proper, mandates the conclusion that a transaction or series of transactions in which all general and limited partners dispose of their interest in the limited partnership leaving a creditor unpaid constitutes a return of capital notwithstanding that in form it is the sale of the limited partners' interest.

51 N.Y.2d at 560, 435 N.Y.S.2d 568, 416 N.E.2d 569.

In reaching its conclusion, the Court determined that the effect upon creditors is the decisive factor in whether a specific transaction amounts to a return of capital. Explained the Court:

[P]rimary in the determination whether a particular transaction constitutes a return of capital is not the limited partner's purpose or intent or how the transaction is structured but its effect upon partnership creditors.

51 N.Y.2d at 563, 435 N.Y.S.2d 568, 416 N.E.2d 569.

Here, the creditors received cash and promissory notes in exchange for their partnership interests. However, the net effect of these transactions upon partnership creditors appears to be a reduction in the amount of capital left to satisfy their claims.

*Whitley v. Klauber* makes it clear that the fact that the limited partners sold their interests to a third party rather than receiving a direct return of capital from the partnership would not alter this finding. This Court finds that the promissory note(s) defendant received constitutes a return of capital contribution as much as did the cash. Both of these issues were raised in *Whitley* and were summarily dismissed. Said the Court:

On the basis of that overriding purpose, we and other courts have held limited partners liable under subdivision (4) of section 106 notwithstanding the absence of fraud, the fact that property other than cash is received by the limited part-

ner or the fact that the transaction takes the form of a sale of limited partners' interests to a third-party, rather than a distribution by the partnership itself.

51 N.Y.2d at 563, 435 N.Y.S.2d 568, 416 N.E.2d 569. The Court went on to add:

Receipt by the limited partner of property (here Bermec stock) rather than cash does not change the result. While subdivision (3) of section 105 of the Partnership Law restricts a limited partner to receipt of cash for his contribution unless the partnership certificate states otherwise or all members consent, that provision has no bearing upon the interpretation of subdivision (4) of section 106, intended as it is to protect creditors.

51 N.Y.2d at 565, 435 N.Y.S.2d 568, 416 N.E.2d 569.

Several older cases stand for the proposition that notes given by the general partner or by an outside third party to a limited partner constitute a return of capital. For example, in *Beers v. Reynolds,* 11 N.Y. 97 (1853), the Court held that a limited partner who had sold his interest to a general partner by taking back a note secured by a chattel mortgage on both partnership property and property of the general partner had received a return of capital. Similarly, in *Neil v. United States,* 195 F.2d 336 (5th Cir.1952), a transaction in which a general partner used cash, his own personal assets and his own promissory note to buy out the limited partners was found to be a return of capital.

As these cases were cited with approval by the Court of Appeals in *Whitley,* the Court must view them as the clearest and most recent statement of New York law. Hence, the full amount received by the defendant in the tender offer, both cash and notes, is subject to being refunded under § 106(4) of the Act.

The fact that the note eventually became worthless due to TSG Partner's inability to pay does not change the result. The note was considered valuable when accepted by the limited partners and its present worth has little relevance to the question now. This same conclusion was reached in *Whitley.* There, the limited partners received stock in a third party corporation in exchange for their limited partnership interests. Like the situation here, the corporation in that case eventually went bankrupt and the stock became worthless. However, the court considered this fact to be immaterial as the stock was considered valuable consideration at the time it was accepted by the limited partners and the subsequent misfortunes of the corporation had no bearing on their characterization as a return of capital.

In actions to recover a return of capital contributions under § 106(4), there is no need to prove an evil intent. Specifically, § 106(4) has no requirement that the return of capital be fraudulent, wrongful or designed to deceive creditors in order to be avoided. Instead, it simply speaks in terms of returned capital which is "rightfully received." Other sections such as § 106(2)(a) and (b) of the Act were designed to deal with situations in which the contribution of capital was wrongfully returned. Therefore, the Court concludes that the plaintiff need not prove fraud or other wrongdoing in connection with the tender offer in order to recover from defendant.

Additionally, for purposes of § 106(4), it does not matter that there may have been sufficient capital remaining in the partnership after the withdrawal to pay all then existing creditors. If the remaining capital becomes depleted at any time after the withdrawal, the withdrawing limited partners must reimburse the partnership so that it may pay creditors who existed at the time of the withdrawal. *See Kittredge v. Langley,* 252 N.Y. 405, 169 N.E. 626, 631 (1930); *Whitley v. Klauber,* 51 N.Y.2d at 263–264, 435 N.Y.S.2d 568, 416 N.E.2d 569.

Likewise, the fact that the creditors assigned their interests to various successors in interest does not relieve them of liability under New York Partnership Law. Section 108(7) of the Act states:

The substitution of the assignee as a limited partner does not release the assignor from liability to the partnership under sections ninety-five and one hundred and six.

This statute has been held to apply to assignments of interest pursuant to a tender offer. *See Whitley v. Klauber, supra.*

The defendant has argued that *Whitley* is inapplicable to the present action as some of the limited partners have chosen to retain their interests rather then to tender their interests pursuant to the tender offer. The Court finds, however, that to accept such an argument would be putting form ahead of substance. Therefore, the Court concludes that the sale of the vast majority of the partnership interests is tantamount to a complete bail out of the limited partners.

Obviously, the New York courts are far more concerned with the protection of creditors than with the protection of limited partners who had received a return of their capital. For instance, in *Whitley* the Court said:

> That the purpose of the subdivision is the protection of creditors is crystal clear not only from the explicit reference to "creditors who extended credit or whose claims arose before such return" but also from the imposition of liability under its provision even though the contributor has "rightfully received the return."

*Whitley* echoes the sentiments expressed in *Kittredge v. Langley,* 252 N.Y. 405, 169 N.E. 626 (1930), wherein Justice Benjamin Cardozo stated:

> [A] special [limited] partner is liable, to the extent of his withdrawn capital for the payment of a partnership liability, where the assets left with the general partners irrespective of their valuation at the time of their valuation at the time of dissolution, are thereafter found to be inadequate.
>
> \*   \*   \*   \*   \*   \*
>
> We think his obligation to creditors to the extent of his limited liability can be discharged by nothing less than payment.
> ... The special partner does not relieve himself of liability by withdrawing his contribution. He remains liable as before, though as before his liability is limited.

> ... The conclusion is hardly thinkable that the special partner may keep the cash, and leave the creditors with nothing.
>
> His contribution, like the capital of a corporation, and to a similar extent, is to be treated as a trust fund for the discharge of liabilities.
>
> ... The special partner insists that the risk of change was on the creditors. We think it was on him.

*Id.* 169 N.E. at 631.

█  This Court will defer to the wisdom of the New York Court and will follow its precedence by imposing liability upon the defendant. Defendant next argues that the three year statute of limitations applicable to liabilities created by statute, § 214(2) New York Civil Practice Law and Rules (McKinney's Book 17B) [C.P.L.R. 214(2) ], bars plaintiff's present action. Plaintiff disputes these contentions, pointing out that the only case that has addressed the applicable limitations period for a claim under § 106(4) is again *Whitley v. Klauber.*

There, the Court of Appeals upheld the lower court decision which squarely held that the statute of limitations under § 106(4) of the Act does not begin to run until the creditor has obtained a judgment. Said the Court:

> Respondents contend that the present claim is barred by the statute of limitations, asserting that plaintiff's cause of action accrued either in August 1986 when BWF distributed the Bermec stock to the limited partners, or no later than March 1971, when Bermec filed for reorganization under bankruptcy laws. However, in order for plaintiff to proceed against the limited partners, it would be necessary for him to establish the unavailability of partnership assets to satisfy his claim. This did not occur until conclusion of the prior litigation against the partnership and its corporate general partner when judgment in that action was entered March 7, 1977.

*Whitley v. Klauber,* 417 N.Y.S.2d 959, 965, 69 A.D.2d 99 (1st Dept.1979).

Here, a determination has been made as to the validity of only six claims, the earliest of which was allowed on September 11, 1986. Thus, if C.P.L.R. 214(2) is the applicable statute of limitation, it will not expire until September 11, 1989.

■ Alternatively, plaintiff asserts that the action is timely under the doctrine of relation back. *See* Rule 15(c), F.R.Civ.P. Under this doctrine, an amendment to a cause of action relates back to the date of the original pleading if it arises out of the same "conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading ..." Having reviewed the various pleadings, the Court is satisfied that the plaintiff's amended complaint asserts actions arising out of the same facts and transactions giving rise to his original cause of action. The Court concludes, therefore, that plaintiff's action is neither time barred under C.P.L.R. 214(2) or under Rule 15(c), F.R.Civ.P.

The Court finds that New York law is abundantly clear on the issues thus presented. The policies embodied in § 106(4) and § 108(7) of the Act mandate that creditors be protected from limited partners who would bail out of the partnership when prospects of financial demise appear on the horizon. Defendant's criticism that we have placed too much emphasis on the *Whitley* decision is not well founded as defendant has failed to provide the Court with any authority which would compel the Court to reach a different conclusion.

Plaintiff contends that the *Whitley* decision mandates that he be granted partial summary judgment as to the first cause of action on the issue of liability under § 106(4) upon showing that the following facts are not in dispute: (1) defendant was a limited partner of the partnership and made a capital contribution to the partnership; (2) defendant subsequently received a return of its capital contribution by means of the tender offer; (3) at the time defendant received a return of its capital contribution, there existed creditors of the partnership; and (4) creditors of the partnership who existed at the time the defendant received a return of its capital contribution remain unpaid today.

Plaintiff's contention is borne out by the language of the *Whitley* decision, wherein the court states:

> What a limited partner will be permitted to contest in an action by a partnership against which a judgment establishing its liability to a creditor has been obtained is only whether he is in fact a limited partner, whether he received a return of capital, whether the judgment creditor was one whose claim arose before that return, and whether the judgment creditor was one whose claim arose before that return, and whether the amount sought by the partnership as return of capital was necessary to discharge the partnership liability (that is, whether the partnership had other means for discharging the liability).

51 N.Y.2d at 571, 435 N.Y.S.2d 568, 416 N.E.2d 569.

■ As plaintiff has moved for summary judgment as to the first cause of action on the issue of liability only, it is not now necessary to show the final element mentioned above, that is, that the return of capital is necessary because the partnership will have no other means to pay creditors. That issue is better left until a final determination can be made regarding claims against the partnerships' bankruptcy estate. Thus, plaintiff's motion is limited in scope to a determination that defendant will be liable as a limited partner for the shortfall between assets of the partnership and claims of creditors that are eventually allowed in bankruptcy, subject only to the amount of returned capital contributions plus interest.

The documentary evidence before the Court in affidavits and exhibits leaves no doubt that the elements the plaintiff must prove are no longer at issue in this case. Indeed, defendant has stipulated away most of the facts which would establish its defenses, to wit:

(1) Dayton Securities Associates was a limited partner of TSG80 and made a capital contribution to TSG80;

(2) Dayton Securities Associates subsequently sold its interest in TSG80 to TSG Partners pursuant to a tender offer, receiving cash and notes from TSG Partners for its interest;

(3) At the time DSA sold its interest, there existed at least one creditor of TSG80; and

(4) The creditor who existed at the time DSA sold its interest in TSG80 remains unpaid today.

Defendant has failed to muster adequate evidence to rebut the conclusion that there remains no material issue of fact regarding the present motion. Accordingly, the Court finds that the motion for summary judgment as to the first cause of action should be granted as to the defendant's liability only.

The Court will enter a separate order in accordance with this opinion.

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO FIRST CAUSE OF ACTION (LIABILITY ONLY)

Upon the Memorandum Opinion separately entered, the Court grants partial summary judgment as to the first cause of action in favor of plaintiff on the limited issue of liability for the return of capital contributions received by the defendant in connection with the sale of its partnership interests. It is, therefore,

ORDERED as follows:

1. Plaintiff's motion for partial summary judgment as to the first cause of action (liability only) is GRANTED.

2. Should it be finally determined that there is a shortfall in partnership assets so that creditors existing at the time defendant assigned its interest remain unpaid, the defendant will be directed to turnover a sum not to exceed the amount of capital contributions returned plus interest.