[20 NYS3d 41]

Peckar & Abramson, P.C., Appellant, v Lyford Holdings, Ltd., et al., Defendants, and Mitchell Stern, Respondent.

First Department, November 17, 2015

**APPEARANCES OF COUNSEL**

*Strassberg & Strassberg, P.C.*, New York City (*Todd Strassberg* of counsel), for appellant.

*Wachtel Missry LLP*, New York City (*Stella Lee* and *Evan S. Weintraub* of counsel), for respondent.

**OPINION OF THE COURT**

Acosta, J.

At issue in this appeal is a claim under the Debtor and Creditor Law by plaintiff, a judgment creditor with an unpaid judgment against defendant Savoy Little Neck Associates, LP (Savoy), and against defendant Mitchell Stern, a former limited partner of Savoy. Stern received $425,000 for his sale and assignment of his interest in Savoy to defendant Savoy Senior

Housing Corp. (SSHC). The source of that payment to Stern was a $722,365.43 property tax refund Savoy received in September 2004, which funds Savoy had turned over to defendant Savoy Management Corporation (SMC), which in turn paid Stern. We find that since the transfer of Savoy's tax refund to SMC was upheld after trial as nonfraudulent, that determination bars plaintiff's claim against Stern even if it was a partnership distribution.

In an action commenced in April 2004, plaintiff law firm, Peckar & Abramson, P.C., obtained a default judgment against Savoy for $237,731.75 for outstanding legal fees (*Peckar & Abramson, P.C. v Savoy Little Neck Assoc., L.P.*, Sup Ct, NY County, index No. 105261/04).

Defendant Savoy was a limited partnership whose business consisted of acquiring and developing a property in Little Neck, New York. Stern became a limited partner of Savoy in March 1999, when he made a capital contribution for which he was assigned a 19.8% interest. At the same time, a number of Stern's friends and family members (with Stern, the Stern Group) also made capital contributions and became limited partners of Savoy. Together the Stern Group invested over $1 million in Savoy, representing a total preferred limited partnership interest of 37.62%.

On August 1, 2004, Stern, on the Stern Group's behalf, entered into an assignment with SSHC, assigning the Stern Group's interest in Savoy to SSHC, in consideration for $425,000. In October 2004, Stern was paid $425,000 by check drawn on an account held by SMC.

Approximately two months earlier, in June 2004, Savoy sold its major asset, the property, to an unrelated entity, CRP Little Neck, LP. Pursuant to Savoy's Operating Agreement, the sale was a "Liquidating Event." Plaintiff maintains that, as of the date of the sale, Savoy was insolvent and its only remaining major asset was a claim for a property tax refund.

By check dated September 24, 2004, the Department of Finance of the City of New York issued Savoy a real property tax refund in the amount of $722,365.43, which was deposited into an account held by SMC at North Fork Bank.

In January 2009 plaintiff commenced this action under the Debtor and Creditor Law and the Revised Limited Partnership Act (Partnership Law, art 8-A, § 121-101 *et seq.* [RLPA]), seeking to set aside a series of payments and/or distributions made by Savoy to defendants.

The court dismissed the original complaint as barred by RLPA § 121-607 (c)'s three-year statute of limitations. The amended complaint alleges only violations of the Debtor and Creditor Law and seeks to void the various checks and transfers pursuant to Debtor and Creditor Law article 10. The causes of action at issue for purposes of this discussion are: the second cause of action as against the Savoy defendants, challenging the transfer of the tax refund to SMC as being without consideration; and the third cause of action as against Stern, challenging SMC's transfer of the tax refund proceeds to Stern as being without consideration.

Stern and the Savoy defendants subsequently moved for summary judgment. Stern sought dismissal of the third cause of action arguing that, although structured as an assignment, the $425,000 transaction was actually a return on his capital contribution and subject to the RLPA's three-year statute of limitations.

The court agreed with Stern and dismissed the third cause of action, finding the payment to Stern to be a return on his capital contribution, and that the claim to set aside that payment is subject to RLPA's three-year statute of limitations, and thus time-barred (Partnership Law § 121-607 [c]).

The court, however, denied the Savoy defendants' motion for summary judgment, holding that because defendant SMC, White Acre Equities, LLC, Tuscanny Builders, LLC and Tivoli Partners LLC were not limited partners of Savoy, the transfers were subject to the Debtor and Creditor Law's six-year statute of limitations. Plaintiff appealed from the dismissal of the complaint against Stern.

Meanwhile, on or about March 3, 2015, plaintiff proceeded to a bench trial against the Savoy defendants, including on the second cause of action. At the conclusion of the trial, the court issued a defense verdict finding that there were no fraudulent conveyances. Plaintiff did not appeal, and the time to do so has expired.

The verdict in the Savoy defendants' favor forecloses any claims by plaintiff against Stern as a limited partner, and plaintiff's failure to establish that the transfer of the tax refund was fraudulent and devoid of fair consideration forecloses any claim against Stern. The third cause of action, against Stern, relies upon the premise asserted in the second cause of action, that the transfer of the tax refund to SMC was void. While Stern was not a party to the trial, his potential culpability *is*

dependent upon, and derivative of, a finding that the transfer of the tax refund from Savoy to SMC was void. As Savoy and SMC have been exonerated from liability with regard to the transfer of the tax refund to SMC, the defense verdict as to this claim bars plaintiff from following the funds to its next stop, Stern.

Plaintiff argues that the propriety of SMC's transfer of $425,000 to Stern is subject to different proofs than the propriety of the other challenged transfers. However, that distinction is only relevant to the extent that plaintiff has a valid claim to the tax refund money deposited into SMC's account. Plaintiff has already litigated the propriety of the transfer of the tax refund to SMC and cannot relitigate this issue. In the absence of a finding that the tax refund transfer was improper, there can be no finding that any subsequent transfer by SMC violates the Debtor and Creditor Law. Thus, plaintiff's claim against Stern is precluded by the defense verdict rendered in favor of the Savoy defendants.[1]

Plaintiff argues that the $425,000 payment to Stern is governed by the Debtor and Creditor Law's six-year statute of limitations, as it was made, pursuant to a contractual obligation, in October 2004, after Stern had sold his partnership interest. Plaintiff further argues that the court erroneously made factual determinations as to the conflicting evidence concerning the payment and misinterpreted *Whitley v Klauber* (51 NY2d 555 [1980]). These positions, to the extent not mooted by the foregoing discussion, are unavailing.

RLPA § 121-607 prohibits limited partnerships from making distributions "to a partner to the extent that, at the time of the distribution, after giving effect to the distribution, all liabilities of the limited partnership . . . exceed the fair market value of the assets of the limited partnership" (Partnership Law § 121-607 [a]).[2] A limited partner who knowingly receives a prohibited distribution is liable to the partnership in the amount of the distribution (§ 121-607 [b]). However, "a limited partner who receives a wrongful distribution . . . shall have

---

1. This conclusion is not based on principles of res judicata or collateral estoppel, as plaintiff suggests, inasmuch as the defense verdict was rendered in the present action and not a prior action (*Moezinia v Damaghi*, 152 AD2d 453, 457 [1st Dept 1989]).

2. RLPA § 121-101 (c) defines "Distribution" as "the transfer of property by a limited partnership to one or more of its partners in his capacity as a partner."

no liability under this article or other applicable law for the amount of the distribution after the expiration of three years from the date of the distribution" (§ 121-607 [c]). As noted by plaintiff, the Limited Liability Company Law contains a similar limitation on distributions to members (Limited Liability Company Law §§ 102 [i]; 508 [a]).

As an initial matter, the analysis of the statute of limitations and preclusion issues herein appear to be at odds with each other. This is so because the issues at trial, which did not include any limited partners of Savoy, were framed solely in the context of the Debtor and Creditor Law. However, Stern, a (former) limited partner who had different defenses available to the claim asserted against him, was not a party to the trial and thus is not bound by the determinations therein. Thus, while a factual finding at trial, that the tax refund transfer to SMC was not a fraudulent conveyance, is binding on plaintiff, it is not binding as against Stern and does not preclude him from presenting proof to establish that the $425,000, despite being filtered through an account held by SMC, was really a partnership distribution.

As held by the Court of Appeals in *Whitley*, an analogous case, "primary in the determination whether a particular transaction constitutes a return of capital is not the limited partner's purpose or intent or how the transaction is structured but its effect upon partnership creditors" (*Whitley*, 51 NY2d at 563). In *Whitley*, the general and limited partners of the debtor partnership sold their interests to a third party (*id.* at 559). At issue was whether the sale constituted a "distribution" under Partnership Law § 106 (4) (*see id.*), which rendered limited partners liable for a return of capital contribution, to the extent "necessary to discharge [the partnership's] liabilities to all creditors . . . whose claims arose before such return" (Partnership Law § 106 [4]).

In determining that the consideration paid to the partners for the sale of their interests was actually a capital contribution, even though the consideration came from a third party, the *Whitley* Court considered the "end result . . . that the general and limited partners . . . , none of whom retained any connection with the [debtor partnership], have received the entire fair market value of the partnership assets, to the exclusion of its creditor" (51 NY2d at 568). The Court "look[ed] to the effect of the transactions rather than to the form, [to] conclude that they resulted in a return to defendants of their capital" (*id.*).

Thus, contrary to plaintiff's contention, *Whitley* is directly on point. Plaintiff's conclusory claim that the opinion "could not have endured the enactment of RLPA (Partnership Law) § 121-607" is unpersuasive. While *Whitley* involved the application of the Uniform Limited Partnership Act of 1916 (codified at article 8 of the Partnership Law), the RLPA, which was enacted in 1976, did not repeal the old act, and the purpose of the provision at issue here, RLPA § 121-607, is the same— namely, to protect creditors from the threat of dissolution of partnership assets. That plaintiff is not so protected is a result of its failure to seek relief within the statutory period.

Here, Savoy's sole post liquidation asset, the tax refund, was transferred to SMC's account, which had a negative balance prior to the transfer. Within 15 days, SMC, and not SSHC, the assignee, used a large portion of that money to pay Stern his assignment fee. It is clear that the tax refund, the only money in SMC's account, was the source of Stern's payment and plaintiff does not argue otherwise. To the contrary, plaintiff's claimed entitlement to the $425,000 paid to Stern arises from the fact that the money is traceable to Savoy, via the tax refund.

Plaintiff's contention that Stern was no longer a partner at the time of the transfer, having assigned his partnership interest months earlier, is disingenuous. The transfer was merely a delayed payment of consideration due at the time of the assignment. Defendants' inconsistent statements about the nature and purpose of the $425,000 payment do not preclude summary judgment, as the nature, and not the structure, of the transaction is determinative (*Whitley*, 51 NY2d at 568).

Plaintiff's reliance on *Avalon LLC v Coronet Props. Co.* (306 AD2d 62 [1st Dept 2003], *lv denied* 100 NY2d 513 [2003]), for a contrary conclusion, is misplaced. There, this Court found that a 1994 assignment of a right to future settlement proceeds, if any, was final upon execution, when it was perfected, and not two years later, when the proceeds were distributed upon settlement of the underlying litigation (*id.* at 62-63). In contrast, the assignment here was of a partnership interest made in exchange for consideration, payment of which was delayed.

Plaintiff's reliance on *Mann v Broadwall Mgt. of Apthorp LLC* (2009 NY Slip Op 33270[U] [Sup Ct, NY County 2009]) is likewise misplaced. There, the court merely found that moneys paid to the plaintiff, as a result of his status as an investor and

creditor of an LLC, pursuant to a contractual agreement, was unrelated to his role as a member and thus, was not a distribution (*id.*). Here, Stern had only a member role in Savoy, and the payment made relates to that role. *Matter of 37-02 Plaza LLC* (387 BR 413 [ED NY 2008]), relied upon by plaintiff, also involved payments made to a creditor. There, the Bankruptcy Court found that a debtor LLC's payments of interest on promissory notes, as a maker of such notes, to former members one year after the sale of their membership interests were contractual obligations and not wrongful distributions (*id.* at 420-422).

Based upon the foregoing, were it not mooted by plaintiff's inability to challenge the propriety of the transfer of the tax refund to SMC, the grant of summary judgment to Stern, on statute of limitations grounds, would be proper.

Accordingly, the order of the Supreme Court, New York County (Joan A. Madden, J.), entered February 26, 2014, which, to the extent appealed from, granted defendant Mitchell Stern's motion for summary judgment dismissing the third cause of action as against him, should be affirmed, without costs.

RENWICK, ANDRIAS and MOSKOWITZ, JJ., concur.

Order, Supreme Court, New York County, entered February 26, 2014, affirmed, without costs.