## In re SHARPS RUN ASSOCIATES, L.P., Debtor.

Steven R. NEUNER, Trustee, Appellant,

v.

C.G. REALTY CAPITAL VENTURES–I, L.P., Core Operations, Inc. and Wharton Hardware and Supply Corporation, Appellees.

Civ. A. No. 93–1650 (JEI).
Bankruptcy No. 91–10279.
Adv. No. 91–1401.

United States District Court,
D. New Jersey.

July 7, 1993.

Opinion Denying Motion to Amend
or for Reconsideration Aug. 13, 1993.

Neuner & Ventura by Steven R. Neuner, Marlton, NJ, for appellant/trustee.

Silberman, Markovitz & Raslavich by Michael S. Silberman, Philadelphia, PA, for appellees/C.G. Realty Capital Ventures–I, L.P. and Core Operations, Inc.

Joseph Bastianelli, Pennsauken, NJ, for appellee/Wharton Hardware & Supply Corp.

IRENAS, District Judge:

This case comes before this court on appeal by the Trustee of the debtor from a decision of Chief Bankruptcy Judge William H. Gindin holding that a creditor did not have standing to institute an action against limited partners pursuant to N.J.S.A. 42:2A–46(a).[1]

The bankruptcy court had jurisdiction of this action pursuant to 28 U.S.C. § 157(b)(1).[2] We have appellate jurisdiction pursuant to 28 U.S.C. § 158(a). Because Judge Gindin's ruling is based solely on conclusions of law, we exercise plenary review of his decision to dismiss the complaint. *In re Hanratty*, 907 F.2d 1418, 1422 (3d Cir.1990); *J.P. Fyfe, Inc. v. Bradco Supply Corp.*, 891 F.2d 66, 69 (3d Cir. 1989).

We find that New Jersey law, which governs the interpretation of § 46(a), would permit a creditor to pursue the remedy against the limited partners and that, in any case, the crossclaim by the partnership against the limited partners would relate back to the date on which the original complaint was filed. Accordingly, we reverse and remand.

## I. BACKGROUND

### A. *Factual Background*

Appellant, Steven R. Neuner, is the Trustee of Sharps Run Associates, L.P., ("Sharps"), the Chapter VII debtor. Sharps is a New Jersey limited partnership which was once engaged in the business of real estate development. Appellees, C.G. Realty Capital Ventures—I, L.P. ("CG Realty") and Core Operations, Inc. ("Core"),[3] are the two limited partners of Sharps. CG Realty had a 40% interest in Sharps by reason of an $800,000 capital contribution, while Core contributed $200,000, entitling it to a 10% share. The general partner, DEKO Development Associates–Sharps Run ("DEKO"), is not a party to this ap-

---

1. N.J.S.A. 42:2A–46(a) provides:
 If a limited partner has received the return of any part of his contribution without violation of the partnership agreement or this chapter, he is liable to the limited partnership for a period of one year thereafter for the amount of the returned contribution, but only to the extent necessary to discharge the limited partnership's liabilities to creditors who extended credit to the limited partnership during the period the contribution was held by the partnership.

2. Judge Gindin found that the within action was a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E) and (O).

3. CG Realty is a Delaware limited partnership and Core is a Florida corporation. Core is the general partner of CG Realty.

peal.[4] Wharton Hardware and Supply Corp. ("Wharton"), a New Jersey corporation, is the creditor of Sharps and is also an appellee.[5]

On January 26, 1989, Wharton paid $11,800,000 to purchase the Sharps Run Shopping Center, which was being built by Sharps. As part of the purchase agreement Sharps agreed to construct an additional 17,500 square feet of leasable space by August, 1989, at no additional cost. On the same day, Wharton loaned Sharps $300,000, at ten percent interest, to finance the completion of the space. The agreement required Sharps to finish construction in seven months and to repay the $300,000 loan, with interest, on or before January 26, 1991.

On January 31, 1989 and February 7, 1989, the net sale proceeds of $4,603,698.13 were distributed among the general partner and the limited partners. CG Realty and Core received $1,763,334.72 and $440,883.68, respectively. This distribution included the return of their initial $1,000,000 contribution.

At the time of distribution, sufficient assets existed to satisfy all partnership debts. There is no dispute that the distribution to the limited partners did not violate any provision of N.J.S.A. 42:2A–1 *et seq.*, New Jersey's limited partnership statute. However, after the distribution, the general partner absconded with the partnership's funds and left Sharps defunct. Sharps failed to complete the construction.

### B. Procedural Background

On January 18, 1990, Wharton filed a complaint in the Superior Court of New Jersey, Chancery Division, against, among others, Sharps, DEKO, CG Realty and Core. The first count against Sharps was for breach of contract. In the second count Wharton sought the appointment of a receiver for Sharps pursuant to N.J.S.A. 42:6–1. The fourth count was directed against the limited partners to recover the January 26, 1989 distribution "pursuant to N.J.S.A. 42:2A–46 and 42:2A–46(b)." [6]

Both the request for appointment of a receiver and the *ad damnum* to the fourth count make it clear that, consistent with the language of § 46(a), Wharton is asserting the *partnership's* cause of action as distinct from its own, which is covered by the first count.[7]

On March 2, 1990, Wharton amended its complaint to add two additional counts against parties who are no longer involved in this litigation. There was no change in the complaint insofar as it related to the dispute presently before the court.

On May 8, 1990, Robert J. Partlow was appointed receiver for Sharps. On August 2, 1990, the receiver filed a cross-claim against the limited partners seeking judgment and recovery of the returned capital contributions. Sharps then filed a Chapter 11 petition on January 18, 1991. The Superior Court sua sponte dismissed the case without prejudice subject to a full disposal of the issues during bankruptcy proceedings. Steven R. Neuner was appointed Trustee for Sharps. Neuner converted the Chapter 11 petition into a Chapter 7 proceeding. At the Trustee's request, the case was reinstated by the Superior Court on September 4, 1991.

---

**4.** James J. DePetris and Frederick Kozlowski were general partners of DEKO, a Pennsylvania general partnership. DePetris and Kozlowski have filed individual bankruptcies. DEKO is defunct. As a result, DEKO, DePetris, and Kozlowski are no longer involved in this action.

**5.** Although the creditor, Wharton Hardware and Supply Corporation, is listed as an Appellee, because of the alignment of the parties in the litigation, its interests are allied with those of the appellant Trustee.

**6.** The parties agree that only § 46(a) is at issue in this case. Distributions that violate the partnership agreement or the law are covered by § 46(b).

**7.** The fourth count *ad damnum* provides: WHEREFORE, Wharton claims and demands judgment against [the limited partners] in an amount equal to the distribution they received as a result of the sale to Wharton, which monies should be returned to Sharps Run for payment of its debts and obligations to Wharton.

On November 13, 1991, the limited partners petitioned to remove the case to the District Court pursuant to 28 U.S.C. §§ 1334(b) and 1452(a). In accordance with 28 U.S.C. § 157(b), the Honorable Garrett E. Brown, Jr. referred the case to the bankruptcy court on November 20, 1991.

On October 27 and November 12, 1992, the limited partners and the Trustee, respectively, filed cross motions for summary judgment pursuant to Fed.R.Bankr.P. 7056. Before these motions were decided, the Trustee moved and was granted leave to file an amended crossclaim against the limited partners, Core and CG Realty. This amendment, which was filed on January 27, 1993, did not change either the legal or factual basis of the claim.[8]

In a letter opinion filed March 8, 1993, Judge Gindin denied the Trustee's motion and granted the limiteds' cross motion for summary judgment. Although he found that Wharton had extended credit during the period that the contributions of Core and CG Realty had been held by the partnership, Judge Gindin interpreted N.J.S.A. 42:2A–46(a) to deny a creditor standing to assert a claim against the limited partners. Since neither the statutory receiver nor the Trustee filed its claim against the limited partners within one year of the distribution, the bankruptcy court granted the limiteds' summary judgment motion and dismissed the case without explicitly considering whether the receiver's crossclaim against the limiteds should relate back to the date on which Wharton's complaint was filed.

**8.** In his motion for leave to amend the crossclaim, filed on December 18, 1992, the Trustee sought an order that "such amendment … relate back to the original filing of the Complaint." This order would have implicitly decided the pending cross motions for summary judgement in favor of the Trustee. On January 11, 1993, Judge Gindin permitted the crossclaim, but preserved the right of the limited partners to assert all affirmative defenses.

**9.** "Relatively little case law has developed under ULPA [the Uniform Limited Partnership Act of 1916], perhaps because the limited partnership only became widely used as an investment vehicle in the last two decades." *Partnership Equities, Inc. v. Marten,* 15 Mass.App.Ct. 42, 443 N.E.2d 134, 137 (1982).

An order in conformance with the letter opinion was filed on March 9, 1993. This order is now appealed by the Trustee.

## II. DISCUSSION

### A. Creditor Standing

■ This appeal raises the issue of whether a creditor, purporting to act on behalf of a limited partnership, has a right of action against a limited partner under N.J.S.A. § 42:2A–46(a). The answer depends upon whether the words "liable to the limited partnership" in § 46(a) are interpreted to permit only the partnership to have standing to pursue the claim. In his letter opinion, Judge Gindin held that creditors do not have standing to sue the limited partners: "The statute makes the cause of action one which belongs only to the partnership and not to any individual creditor."

■ This issue is one of first impression in New Jersey, and case law in other states is sparse.[9] However, the case law that does exist rejects defendants' construction of § 46(a). In the leading cases of *Whitley v. Klauber,* 51 N.Y.2d 555, 435 N.Y.S.2d 568, 416 N.E.2d 569 (1980), and *Kittredge v. Langley,* 252 N.Y. 405, 169 N.E. 626 (1930), *reh'g denied* 253 N.Y. 555, 171 N.E. 780 (1930), the New York Court of Appeals held that a creditor may recover, in the name of the limited partnership, from the limited partners. While the cases were considered under § 106(4) of New York's Partnership Law, § 106(4) is sufficiently similar to § 46(a) for this court to adopt the reasoning and holding of those cases.[10]

**10.** The Partnership Law of 1922 and N.J.S.A. 42:2–1 *et seq.,* the predecessor of the present New Jersey limited partnership law, were substantially derived from the Uniform Limited Partnership Act of 1919 (ULPA). Section 106(4) of the Partnership Law is the same as ULPA § 17(4):

When a contributor has rightfully received the return in whole or in part of the capital of his contribution, he is nevertheless liable to the partnership for any sum, not in excess of such return with interest, necessary to discharge its liabilities to all creditors who extended credit or whose claims arose before such return.

The corresponding New Jersey statute, N.J.S.A. 42:2–21(4), was also identical to § 17(4).

In *Kittredge v. Langley*,[11] a creditor to a limited partnership received judgment against the partnership, but discovered that he could not recover from the general partners. Kittredge, the creditor, then initiated action against Langley, the limited partner, to recover previously distributed contributions. Despite the fact that Langley was originally dismissed from the suit because of his status as a special partner, Kittredge was permitted to recover against Langley. In *Kittredge*, Chief Judge Cardozo wrote that under the Uniform Limited Partnership Act, "a special partner is liable, to the extent of his withdrawn capital, for the payment of a partnership liability, where the assets left with the general partners irrespective of their valuation at the time of dissolution, are thereafter found to be inadequate." 169 N.E. at 630.

In *Whitley v. Klauber*,[12] the Court of Appeals followed *Kittredge* and upheld the right of a creditor to recover withdrawn contributions on behalf of the partnership. 416 N.E.2d at 576. *Whitley* went further and held that a creditor who has received

judgment against a limited partnership may recover the contributions from the limited partners, even if the limited partners were not parties to the initial action. 416 N.E.2d at 570. In coming to this conclusion, the court stated: "That the purpose of [section 106(4)] is the protection of creditors is crystal clear not only from the explicit references to 'creditors who extended credit or whose claims arose before such return' but also from the imposition of liability under its provision even though the contributor has 'rightfully received the return.'" 416 N.E.2d at 572. *See also In re The Securities Group 1980*, 91 B.R. 143, 149 (Bankr.M.D.Fla.1988) (noting that the policy behind allowing recovery even in cases of valid return is to protect creditors "from limited partners who would bail out of the partnership when prospects of financial demise appear on the horizon").

Defendants confuse the issue of whether they have liability under § 46(a) with the issue of who has standing to enforce that liability. In its original complaint Wharton did not assert a direct claim against the

The present New Jersey statute, 42:2A–46(a), is virtually identical to ULPA's successor, the Revised Uniform Limited Partnership Act of 1976 with 1985 Amendments (RULPA), § 608(a), which states:

> If a partner has received the return of any part of his [or her] contribution without violation of the partnership agreement or this [Act], he [or she] is liable to the limited partnership for a period of one year thereafter for the amount of the returned contribution, but only to the extent necessary to discharge the limited partnership's liabilities to creditors who extended credit to the limited partnership during the period the contribution was held by the partnership.

In effect, the difference between § 106(4) of the Partnership Law of 1922 and N.J.S.A. 42:2A–46(a) is the difference between ULPA § 17(4) and RULPA § 608(a).

The only significant differences between § 106(4), the statute construed in *Whitley* and *Kittredge*, and N.J.S.A. § 42:2A–46(a) are the omission of reference to interest and the imposition of a one year recovery period. The statutory deletion of interest is probably not significant because a trial court always has the authority to award prejudgment interest where the damages are capable of being ascertained by computation. *See Meshinsky v. Nichols Yacht Sales, Inc.*, 110 N.J. 464, 541 A.2d 1063 (1988). More importantly, the language under consideration, "liable to the limited partnership," is the

same, for all intents and purposes, as "liable to the partnership," the language contained in § 106(4).

Deciding this case in a manner consistent with the decisions of other jurisdictions comports with the rationale of the Uniform Laws. As of 1993, 47 states and the District of Columbia had adopted RULPA, and only Vermont, Louisiana, and New Hampshire had not. Of these three, only Louisiana has not adopted either uniform law. N.J.S.A. 42:2A–2(b) provides that "this chapter shall be so interpreted and construed as to effect its general purpose to make uniform the law of those states which enact it." While § 2(b) does not mandate following decisions of questionable merit for the sake of conformity, it does contemplate at least an initial assumption of adherence to existing law.

11. *Kittredge* was decided under the New York Partnership Law of 1897. Under the Law of 1897, a "special partner was conceived to be a true partner, but with limited liability." 169 N.E. at 630. However, the Court of Appeals also considered the case under the Partnership Law of 1922. The court stated that "[e]ven under the uniform act, however ... a special partner is liable, to the extent of his withdrawn capital, for the payment of a partnership liability." *Id.*

12. *Whitley* was decided under § 106(4) of the Partnership Law of 1922.

limited partners. Rather, it asserted that Core and CG Realty were liable to Sharps, and joined the partnership as a defendant to force it to satisfy its obligations to creditors.

Since the statute is silent on the question of standing, we must look to New Jersey's rules of statutory construction. Any construction of a statute that "will render any part of a statute inoperative, superfluous, or meaningless, is to be avoided." *State v. Reynolds*, 124 N.J. 559, 564, 592 A.2d 194, 196 (1991); *Paper Mill Playhouse v. Millburn Tp.*, 95 N.J. 503, 521, 472 A.2d 517, 526 (1984); *In re Stemark Associates*, 247 N.J.Super. 13, 19, 588 A.2d 830, 833 (App.Div.1991) (stating that a "statute must be read to give effect to all its parts without reaching an absurd result"). Statutes must be interpreted "without undue emphasis on any particular word or phrase" to do justice to the overall meaning of the statute. *Zimmerman v. Municipal Clerk of Berkeley Tp.*, 201 N.J.Super. 363, 368, 493 A.2d 62, 65 (App. Div.1985).

Defendants' construction of § 46(a) would completely deny creditors relief in a wide variety of situations where there is not the slightest hint that the legislature desired to exonerate limited partners from liability. One can conceive of a literally endless number of scenarios in which a general partner will lack either the capacity or the will to pursue a limited partner to whom a distribution was recently made. The general partner may not have any assets with which to pursue recovery; the general partner, as in this case, may have absconded with the funds; the general partner may be in collusion with the limited partners; the general partner may have died; or the general partner may simply not want to be bothered. Defendants' interpretation of the statute would leave the creditor remediless in the very situations in which the statute would most likely be

needed. "The conclusion is hardly thinkable that the special partner may keep the cash, and leave the creditors with nothing. His contribution ... is to be treated as a trust fund for the discharge of liabilities." *Kittredge*, 169 N.E. at 631.

On the other hand, allowing a creditor standing to assert the § 46(a) claim on behalf of the limited partnership imposes no liability which does not already exist. The limited partner's obligation to return the distributed contribution is no lesser or greater because a creditor, rather than the general partner, is willing and able to pursue recovery. N.J.S.A. 42:2A–46 should be construed as a remedial statute to effectuate the clear intent of the legislature—the protection of creditors, particularly since this interpretation does no violence to the language of the statute which is silent on the issue of standing. *See, e.g., Service Armament v. Hyland*, 70 N.J. 550, 559, 362 A.2d 13, 17 (1976); *Cristiani v. Paul*, 195 N.J.Super. 179, 183, 478 A.2d 792, 794 (Law Div.1983).

The court is sensitive to the need to avoid exposing limited partners to a rash of suits from unpaid creditors and the corresponding need to avoid races to the courthouse in which individual creditors rush to get quick judgments against unhappy limited partners. These problems can be handled by enforcing rules of mandatory joinder of parties to avoid a multiplicity of litigation and promote equity among creditors. Joining the general partnership and its general partners as parties, as was done in this case, will generally achieve this result,[13] while granting standing to creditors will allow creditors to enjoy the protection granted by the legislature without being subject to the whims, integrity, or ability of a general partner, over whom they have no control.

---

**13.** Both *Kittredge*, 169 N.E. at 627, and the Appellate Division's opinion in *Whitley*, 69 A.D.2d 99, 417 N.Y.S.2d 959, 965 (1979), *aff'd*, 51 N.Y.2d 555, 435 N.Y.S.2d 568, 416 N.E.2d 569 (N.Y.1980), seem to require a creditor to exhaust remedies against the partnership assets before pursuing the limiteds. Whether New Jersey would impose such a requirement is beyond the scope of this opinion since there is no suggestion that the bankrupt partnership has other funds to satisfy Wharton's claim.

## B. Relation Back Doctrine

■ Even were the court to accept the argument that creditors have no standing to assert a claim under N.J.S.A. 42:2A–46(a), appellant would prevail if the cross-claim filed by the receiver against the limited partners on August 2, 1990, were deemed to relate back to January 18, 1990, the date on which Wharton's complaint was filed—less than one year after the distributions made to Core and CG Realty on January 31 and February 7, 1989.

■ The rationale behind statutes of limitation is to allow defendants to rest knowing that they are free from liability after a statutory period and to "give parties some sense of security that they will not have to defend against a stale claim." *Cockinos v. GAF Corp.*, 259 N.J.Super. 204, 208, 611 A.2d 1154, 1156 (Law Div.1992); *Jones v. Jones*, 242 N.J.Super. 195, 203, 576 A.2d 316, 320 (App.Div.1990) (noting that the most important purpose of statutes of limitation "is the security and stability of human affairs created by eventual repose"), *cert. denied*, 122 N.J. 418, 585 A.2d 412 (1990); *Greco v. Valley Fair Enters.*, 105 N.J.Super. 582, 584, 253 A.2d 814, 816 (App.Div.1969).

However, the courts have recognized that the "[u]nswerving, mechanistic application of statutes of limitation would at times 'inflict obvious and unnecessary harm upon individual plaintiffs' without materially advancing the objectives they are designed to serve." *Jones*, 242 N.J.Super. at 203, 576 A.2d at 320 (citing *Galligan v. Westfield Centre Service, Inc.*, 82 N.J. 188, 192, 412 A.2d 122, 124 (1980)); *Zaccardi v. Becker*, 88 N.J. 245, 258–259, 440 A.2d 1329, 1334 (1982), *superseded on other grounds by Feinsod v. Noon*, 261 N.J.Super. 82, 617 A.2d 1234 (App.Div. 1992). In New Jersey, it "is now well settled ... that statutes of limitation will not be applied when they would unnecessarily sacrifice individual justice under the

circumstances." *Zaccardi*, 88 N.J. at 258–259, 440 A.2d at 1336.

■ The relation back doctrine is a counterweight that may sometimes be used to offset the harsh consequences of statutes of limitation. R. 4:9–3 of the Rules Governing the Courts of the State of New Jersey provides:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading; but the court, in addition to its power to allow amendments may, upon terms, permit the statement of a new or different claim or defense in the pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.[14]

In *Harr v. Allstate Ins. Co.*, 54 N.J. 287, 255 A.2d 208 (1969), the New Jersey Supreme Court stated that the relation back doctrine

> should be liberally construed. Its thrust is directed not toward technical pleading niceties, but rather to the underlying conduct, transaction or occurrence giving rise to some right of action or defense. When a period of limitation has expired, it is only a distinctly new or different claim or defense that is barred. Where the amendment constitutes the same matter more fully or differently laid, or the gist of the action or the basic subject

---

**14.** Fed.R.Civ.P. 15(c) is substantially the same as R. 4:9–3. The comments to the 1991 Amendment to Rule 15(c)(1) evince a manifest intention to liberally construe the relation back doctrine, stating that "[w]hatever may be the con-

trolling body of limitations law, if that law affords a more forgiving principle of relating back than the one provided in this rule, it should be available to save the claim."

of the controversy remains the same, it should be readily allowed and the doctrine of relation back applied.

54 N.J. at 299, 255 A.2d at 215; *See Gudnestad v. Seaboard Coal Dock Co.*, 15 N.J. 210, 223, 104 A.2d 313, 320 (1954); *Cockinos*, 259 N.J.Super. at 209, 611 A.2d at 1156.

The reach of R. 4:9–3 was demonstrated in *Aruta v. Keller*, 134 N.J.Super. 522, 342 A.2d 231 (App.Div.1975). There, a workman was injured while operating an "automatic round steel rod fabricating machine" and pursued recovery against the manufacturer. During discovery, the plaintiffs[15] learned that the wrong party had been served. They amended their complaint and served the correct party, but the statute of limitations had run. The Law Division dismissed the complaint, on the grounds that a completely new defendant was being joined. The Appellate Division reversed, holding that "[t]o the extent that R. 4:9–3 suggests that a new party cannot be added in the circumstances of the case at hand, we find the rule unduly confining. It should be relaxed in the interests of justice." 134 N.J.Super. at 529, 342 A.2d at 235. The *Aruta* court noted that

> Once an action is commenced by the filing of a complaint within time, judicial interpretation is essential to determine whether joinder of a properly named party may be considered timely thereafter.... the issue is one of balancing interests, of individual justice and repose. The good faith and reasonableness of plaintiffs' conduct must be measured against a claim of prejudice to defendants.

134 N.J.Super. at 529–530, 342 A.2d at 235.

*Aruta* was extended by the Appellate Division in *Wimmer v. Coombs*, 198 N.J.Super. 184, 486 A.2d 916 (App.Div. 1985). In *Wimmer*, the Superior Court noted that in the case of a new or different claim, the determination is left to the court's discretion as provided for in *Aruta*.

198 N.J.Super. at 187, 486 A.2d at 918. However, the court stated that the first clause of R. 4:9–3, "is a definitive and self-executing provision for relation back of those amendments stating claims which 'arose out of the conduct, transaction or occurrence' set forth in the original pleading." *Id.* These claims are *"entitled* to relation back." *Id.* (emphasis added); *See Cockinos*, 259 N.J.Super. at 209, 611 A.2d at 1156

The receiver's claim arose out of the original case and is identical to that asserted by Wharton in the fourth count of the complaint (see p. 771, *supra* ). The rationale behind the statute of limitations has been satisfied. There is no stale claim since it is undisputed that Wharton filed its complaint within the time prescribed by § 46(a). *See Zaccardi*, 88 N.J. at 258, 440 A.2d at 1335–36 (stating that "[b]ecause the initial complaint was timely filed, defendants have had adequate warning to prepare their defense" and there is no danger of defending against a stale claim).

There is no prejudice to the limited partners. The complaint, which specifically cited N.J.S.A. 42:2A–46, clearly demanded that the limited partners return their distributions to the partnership for subsequent payment to the creditors. And because the partnership itself, as well as the general partner, were joined from the outset, all parties needed to grant complete relief were present in the same law suit. *See Harr*, 54 N.J. at 300, 255 A.2d at 215; *Greco*, 105 N.J.Super. at 584, 253 A.2d at 816; *Cockinos*, 259 N.J.Super. at 210, 611 A.2d at 1157.

The limited partners in this case neither enjoyed repose by virtue of the passage of time nor were they prejudiced by the substitution of the receiver for the creditor as their principal adversary. In this situation this court finds compelling the reasoning of the Supreme Court in *Farrell v. Votator Div. of Chemetron Corp.*, 62 N.J. 111, 299 A.2d 394 (N.J.1973):

---

**15.** Aruta filed for personal injury and his wife for loss of consortium.

There is no suggestion that the lapse of time has resulted in loss of evidence or impairment of ability to defend; nor is there any suggestion that the plaintiffs have been advantaged by it. Justice impels strongly towards affording the plaintiffs their day in court on the merits of their claim; and the absence of prejudice, reliance or unjustifiable delay, strengthens the conclusion that this may fairly be done in the matter at hand "without any undue impairment of the [statute of] limitation or the considerations of repose which underlie it."

62 N.J. at 121, 299 A.2d at 400 (citation omitted).

The court will enter an order reversing the March 9, 1993, order of the bankruptcy court and remand the matter for further proceedings consistent with this opinion.

## MOTION TO AMEND OR FOR RECONSIDERATION

C.G. Realty Capital Ventures—I, L.P. and Core Operations, Inc., the limited partners of Sharps Run Associates, L.P. ("Sharps"), move before this court to amend an interlocutory order, entered on July 8, 1993, to permit immediate appeal to the Court of Appeals pursuant to 28 U.S.C. § 1292(b),[1] or in the alternative, for reconsideration. The opinion accompanying the order ("Opinion") found that a creditor, acting on behalf of the partnership, has standing under N.J.S.A. 42:2A–46(a)[2] to recover capital contributions returned to limited partners, and alternatively, that a receiver's crossclaim, also seeking the return of the contributions, could relate back to the creditor's original filing date.[3] In moving for amendment or reconsideration, the defending limited partners state that (i) the issue of creditor standing was one of first impression and should be considered by the Third Circuit, and (ii) that this court erroneously applied New Jersey relation back law instead of Federal Rule of Civil Procedure 15(c).[4]

For the reasons set forth below, defendants' motion to amend and for reconsideration shall be denied.

1. Section 1292(b) provides:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

2. Section 46(a) provides:

If a limited partner has received the return of any part of his contribution without violation of the partnership agreement or this chapter, he is liable to the limited partnership for a period of one year thereafter for the amount of the returned contribution, but only to the extent necessary to discharge the limited partnership's liabilities to creditors who extended credit to the limited partnership during the period the contribution was held by the partnership.

3. While this opinion speaks in terms of relation back of the receiver's crossclaim, a Trustee "steps into the shoes" of the receiver and thus, each reference also applies to the Trustee.

4. Rule 15(c) provides:

An amendment of a pleading relates back to the date of the original pleading when
(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(j) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

## A. 28 U.S.C. § 1292(b) Motion [5]

■ Defendants argue that there are substantial grounds for differences of opinion in the two issues decided by this court. Defendants invite this court to amend the July 8 order with the following language:

In the opinion of the Court this Order involves a controlling question of law as to which there is a substantial ground for difference of opinion, and an immediate appeal from the order may materially advance the ultimate termination of the litigation.

The factors a district court must consider in determining whether to permit an application to the Court of Appeals are drawn directly from § 1292(b). The statute imposes three criteria for the district court's exercise of discretion. "The order must (1) involve a 'controlling question of law,' (2) offer 'substantial ground for difference of opinion' as to its correctness, and (3) if appealed immediately 'materially advance the ultimate termination of the litigation.'" *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir.), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974); *see also Singh v. Daimler–Benz, AG*, 800 F.Supp. 260, 263 (E.D.Pa.1992); *Max Daetwyler Corp. v. Meyer*, 575 F.Supp. 280, 282 (E.D.Pa.1983), *question answered*, 762 F.2d 290 (3d Cir.1985), *cert. denied*, 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985). In evaluating these factors, "the court must remember that certification is generally not to be granted. . . . A motion should not be granted merely because a party disagrees with the ruling of the district judge." *Max Daetwyler Corp.*, 575 F.Supp. at 282; *see also United States v. Grant Trunk Western R.R.*, 95 F.R.D. 463, 471 (W.D.Mich.1981) (denying certification where party "merely questions the correctness" of the original ruling).

The Third Circuit, in *Katz*, stated that the clear case of a controlling question of law was one which if decided erroneously "would result in a reversal of a judgment after final hearing." 496 F.2d at 747; *see*

also *Singh*, 800 F.Supp. at 263; *Max Daetwyler Corp.*, 575 F.Supp. at 282. However, that court also seemed to suggest that a question of law could be controlling if it was "serious to the conduct of the litigation, either practically or legally," noting that "on the practical level, saving of time of the district court and of expense to the litigants was deemed by the [congressional] sponsors [of § 1292(b) ] to be a highly relevant factor." 496 F.2d at 747. Using this standard it is easy to conclude that both questions are serious to the conduct of the case. However, under the reversal standard this conclusion is less clear because the court's rulings on the issues of creditor standing and relation back each independently mandate the ultimate decision. Both holdings must be reversed on appeal in order to change the outcome.

Whether there is substantial ground for a difference of opinion as to the challenged order and whether certification would materially advance the termination of this litigation are issues closely related to the defendants' likelihood of success on appeal. The defendants assert that an immediate appeal would "obviate the potential need of multiple trials and multiple appeals if the July 8, 1993 Order were reversed." Limited Partners' Memorandum at 20. In this case, success on one issue would only prolong litigation, since the outcome would change only with the reversal of both holdings. Unless the defendants can demonstrate a likely prospect of success on both issues, a denial of the § 1292(b) certificate would be more efficient than allowing appeal. As one court explained:

While certainly the ultimate termination of this litigation would be advanced if the Court of Appeals heard and sustained defendant's defense at this time, the court is not of the opinion that this is a likely course of events. Therefore, the court will not invoke its discretionary authority to certify the issues decided in this order to the Court of Appeals under section 1292(b).

---

**5.** The factual background and procedural history of this case are laid out in full in the Opinion of July 8, 1993.

*United States ex rel. Hollander v. Clay,* 420 F.Supp. 853, 859 (D.D.C.1976). "It is the duty of the district judge ... to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a *substantial* ground for dispute." *Max Daetwyler Corp.,* 575 F.Supp. at 283.

 In this case, as discussed earlier, this court would have to find grounds for differences of opinion as to both creditor standing and relation back to certify. We find insufficient ground for a difference of opinion as to the issue of relation back. Accordingly, we do not consider the issue of creditor standing under N.J.S.A. 42:2A–46(a).[6]

In claiming that there is substantial ground for a difference of opinion as to the issue of relation back, the limited partners state that: (i) relation back is governed by Federal Rules of Civil Procedure Rule 15(c) rather than New Jersey Court Rules 4:9–3; and (ii) that the one year recovery period in § 46(a) is a statute of repose, and Rule 15(c) does not apply to statutes of repose.

### 1. Relation Back Under The Federal Rules of Civil Procedure

 Relation back is governed by state law in this case. Although the question of relation back is raised within the context of a federal bankruptcy hearing, the issue in contention is completely state based. There is no federal limited partnership statute and there is no federal statute of limitations affecting the return of capi-

tal contribution. The statute of limitations in question is only meaningful when considered in conjunction with N.J.S.A. 42:2A–46(a). Where federal causes of action arise under state law "state statutes of limitations govern the timeliness ... of action unless Congress has specifically provided otherwise." *United Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 703–704, 86 S.Ct. 1107, 1112–13, 16 L.Ed.2d 192 (1966); *see also Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, ——, 111 S.Ct. 2773, 2778, 115 L.Ed.2d 321, *reh'g denied,* —— U.S. ——, 112 S.Ct. 27, 115 L.Ed.2d 1109 (1991); *Chauffeurs, Teamsters, Warehousemen and Helpers, Local Union No. 135 v. Jefferson Trucking Ass'n,* 628 F.2d 1023, 1026 (7th Cir.1980), *cert. denied,* 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981); *Appelbaum v. Ceres Land Co.,* 546 F.Supp. 17, 19 (D.Minn.1981), *aff'd,* 687 F.2d 261 (8th Cir.1982). Because the relation back doctrine also determines the "timeliness of action," state law governs whether a new state claim will relate back to the original state cause of action. *See Oahu Gas Service, Inc. v. Pacific Resources, Inc.,* 473 F.Supp. 1296, 1297 (D.Haw.1979) (holding that state law determines whether state claims will relate back).

 Although a federal rule governing relation back exists, i.e., Fed.R.Civ.P. 15(c), it specifically provides for the application of whichever body of limitations law more liberally allows relation back of amendments.[7] The Advisory Committee Notes to Rule 15(c)(1) indicate that the provision was

---

**6.** However, we note that the defendants' assertion that certification should be granted because the issue of creditor standing under § 46(a) was one of first impression is unpersuasive. Limited Partners' Memorandum at 10. "[T]he mere fact that the appeal would present a question of first impression is not, of itself, sufficient to show that the question is one on which there is a substantial ground for difference of opinion." *Max Daetwyler Corp.,* 575 F.Supp. at 283. In *Singh v. Daimler–Benz, AG,* the District Court for the Eastern District of Pennsylvania stated that even where there was only one other case on point, and that case indicated a different result, the situation did not imply that there was substantial ground for a difference of opinion. 800 F.Supp. at 263.

**7.** Rule 15(c)(1) was added by the 1991 Amendment, and consequently took effect after the original filing date and after the events which led up to the bankruptcy action, but before this court's decision. Thus, the application of 15(c)(1) raises a retroactivity question.

There is some dispute as to the applicability of a statute that becomes effective while a case is pending. In *Bradley v. Richmond Sch. Bd.,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Supreme Court held that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Id.* at 711, 94 S.Ct. at 2016. However, in *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 109 S.Ct.

intended to make it clear that [Rule 15(c)] does not apply to preclude any relation back that may be permitted under the applicable limitations law. Generally, the applicable limitations law will be state law.... Whatever may be the controlling body of limitations law, if that law affords a more forgiving principle of relation back than the one provided in this rule, it should be available to save the claim.

■ Even if state law did not apply, Rule 15(c)(2), (3) would allow relation back. Significantly, Rule 15(c)(2), (3) is substantially similar to New Jersey's relation back provision, R. 4:9–3.[8] Both have been interpreted liberally.

Amendments under Rule 15 are to be "freely given when justice so requires." Fed.R.Civ.P. 15(a). Accordingly, the federal courts have applied Rule 15(c) broadly.

"It is well settled that the Federal Rules of Civil Procedure are to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits and to dispense with technical procedural problems. To this end, amendments pursuant to Rule 15(c) should be freely allowed." *Staren v. American Nat'l Bank & Trust Co. of Chicago,* 529 F.2d 1257, 1263 (7th Cir.1976); *see also Combee v. Shell Oil Co.,* 615 F.2d 698, 701 (5th Cir.1980); *Williams v. United States,* 405 F.2d 234, 236 (5th Cir.1968); *Koal Industries Corp. v. Asland, S.A.,* 808 F.Supp. 1143, 1157–58 (S.D.N.Y.1992).

■ Adequate notice to the defending parties is the critical element in determining whether Rule 15(c) applies, once it has been determined, as it has been in this case, that the new pleading arose from the same "conduct, transaction or occurrence"

---

468, 102 L.Ed.2d 493 (1988), the Court stated, without overturning or citing *Bradley,* that statutes will not be given retroactive effect "unless their language requires this result." *Id.* at 208–209, 109 S.Ct. at 472–73.

Justice O'Connor noted in *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990), that the two decisions were in "apparent tension" but did not reconcile the two lines of case law. *Id.* at 837, 110 S.Ct. at 1577. Justice White, dissenting, explained that the tension was "more apparent than real" because *Bradley* did not refer to "true retroaction, in the sense of the application of a change in law to overturn a judicial adjudication of rights that has already become final" but rather, to the application of new law to pending cases. *Id.* at 864, 110 S.Ct. at 1591; *see also Bonjorno v. Kaiser Aluminum & Chemical Corp.,* 865 F.2d 566, 573 (3d Cir.1989), *rev'd in part,* 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990). *See generally Gersman v. Group Health Ass'n, Inc.,* 975 F.2d 886 (D.C.Cir.1992) (discussing the conflict between *Bradley* and *Bowen* ), *petition for cert. filed,* 61 U.S.L.W. 3523 (U.S. Jan. 13, 1993) (No. 92–1190).

The Third Circuit "has not clearly adopted either rule to the exclusion of the other." *Thompson v. Johnson & Johnson Management Info. Ctr.,* 783 F.Supp. 893, 896 (D.N.J.1992), *aff'd,* 993 F.2d 226 (3d Cir.1993); *see also Kimble v. DPCE, Inc.,* 784 F.Supp. 250, 251–52 (E.D.Pa.1992) (stating that precedent does not "provide a clear rule of statutory construction" on retroactivity). However, the Court of Appeals has stated that the "presumption against 'retroactivity' has generally been applied only when application of the new law would affect rights or obligations existing prior to the change

in law." *Bonjorno,* 865 F.2d at 573; *see Davis v. Omitowoju,* 883 F.2d 1155, 1170–71 (3d Cir. 1989).

In this case, the application of Rule 15(c)(1) neither affects the rights or obligations that existed prior to the enactment, nor does it result in manifest injustice, nor is there statutory or legislative history prohibiting its application. In fact, the Advisory Committee Notes state that the purpose of Rule 15(c)(1) is to clarify the existing rule rather than to make substantive changes. No reason exists to bar the application of Rule 15(c)(1) to this case.

**8.** R. 4:9–3 of the Rules Governing the Courts of the State of New Jersey provides:

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading; but the court, in addition to its power to allow amendments may, upon terms, permit the statement of a new or different claim or defense in the pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

as the original pleading. Fed.R.Civ.P. 15(c)(2); *see Raynor Bros. v. American Cyanimid Co.*, 695 F.2d 382, 384 (9th Cir. 1982); *Staren,* 529 F.2d at 1263; *Williams,* 405 F.2d at 236–37. The defendants in this case clearly had adequate notice. Wharton filed its claim on January 18, 1990. The one year period provided in N.J.S.A. 42:2A– 46(a) did not terminate until January 31, 1990. In its complaint, Wharton sought the return of contributions from the limited partners on behalf of the partnership. When the receiver, representing the partnership, cross-claimed against the limited partners on August 2, 1990, he was merely seeking the identical relief sought in the original complaint. The defendants were sued for the return of their contributions in the original complaint, and the later crossclaim neither changed the theory on which liability was based nor increased the potential size of the judgment.

■ The only difficulty in applying Rule 15(c) is that a crossclaim is not in form an amendment to the original complaint.[9] Nevertheless, the courts have allowed relation back of crossclaims, distinguishing between "counterclaims and crossclaims that seek to somehow reduce the amount a plaintiff can recover, such as by recoupment, contribution, or indemnity, and claims that seek affirmative relief through an independent action. Defensive claims generally relate back, while affirmative claims must satisfy the applicable statute of limitations." *Appelbaum,* 546 F.Supp. at 19; *see also Chauffeurs,* 628 F.2d at 1027; *United States ex rel. Brothers Builders Supply Co. v. Old World Artisans, Inc.,* 702 F.Supp. 1561, 1569 (N.D.Ga.1988).

Here, the receiver's crossclaim is more of an indemnification or contribution claim than an affirmative claim. The receiver seeks judgment not for himself or the partnership, but to satisfy creditors. The crossclaim can hardly be said to be independent where it derives almost entirely from

the creditor's claim against the partnership and the limited partners. Under these circumstances, crossclaims relate back to the original filing. *Brothers Builders,* 702 F.Supp. at 1569–70.

■ The effect of the receiver's crossclaim was to substitute, or join, the proper plaintiff, a possibility which Rule 15(c) clearly contemplates. The Advisory Committee Notes to the 1966 Amendment state:

> The relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is *generally easier.* Again the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs.

(emphasis added).

In *Russell v. New Amsterdam Casualty Company,* 303 F.2d 674 (8th Cir.1962), Russell brought an action for the wrongful death of her husband. Russell originally filed as the decedent's heir, but was barred by a Nebraska statute which recognized only the personal representative in wrongful death actions. Russell amended her complaint to assert her status as the personal representative after the statute of limitations had run. The Eighth Circuit allowed the amendment, holding that because "the amendment did not introduce a new and different cause of action, but went to the right to pursue the same cause of action alleged in the original complaint; that the amendment was therefore procedural, bringing into play Rule 15(c) of the Federal Rules of Procedure." *Russell,* 303 F.2d at 680–81; *see also Andujar v. Rogowski,* 113 F.R.D. 151 (S.D.N.Y.1986) (relating back addition of three new plaintiffs); *Levin v. Weissman,* 594 F.Supp. 322 (E.D.Pa.1984), *aff'd,* 760 F.2d 263 (3d Cir. 1985); *Warpar Mfg. Corp. v. Ashland Oil, Inc.,* 102 F.R.D. 749 (N.D.Ohio 1983) (allow-

---

**9.** The same question arises under R. 4:9–3. In the Opinion, this court evaluated relation back of the receiver's crossclaim, weighing the underlying policy reasons of statutes of limitations, which also apply to Rule 15(c), and the very liberal reading given by New Jersey courts. We take this opportunity to more fully explicate the relationship between crossclaims and the Federal Rules.

ing additions of new plaintiff and new liability to relate back); *Brohan v. Volkswagen Mfg. Corp. of America*, 97 F.R.D. 46 (E.D.N.Y.1983) (permitting relation back of plaintiff's amendment of complaint to reflect appointment as executrix).

Similarly, in *Staren v. American Nat'l Bank & Trust Co. of Chicago*, the Seventh Circuit stated that the substitution of parties after the applicable statute of limitations has run

> is not significant when the change is merely formal and in no way alters the known facts and issues on which the action is based. The courts have freely upheld the filing of an amended complaint under these circumstances.... Finally, the substituted [ ] plaintiff had such an identity of interest with the [original] plaintiffs that the original complaint served to notify defendant ... of the actual claim being asserted against it, with no resulting prejudice to its interests.

529 F.2d at 1263; *see also Raynor Bros.*, 695 F.2d at 384–85.

■ Under federal law, Federal Rule of Civil Procedure 17(a) is an additional and independent basis for relating the receiver's crossclaim back to Wharton's complaint. Rule 17(a) provides:

> Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought; and when a statute of the United States so provides, an action for the use or benefit of another shall be brought in the name of the United States. No action shall be dismissed on

the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

The Advisory Committee's Notes to the 1966 Amendment to Rule 15(c) indicate that to "avoid forfeitures of just claims, revised Rule 17(a) would provide that no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed for correction of the defect in the manner there stated." *See Saul Stone & Co. v. Browning*, 615 F.Supp. 20, 21–22 (N.D.Ill.1985) (finding that plaintiff's claim related back under either 15(c) or 17(a)).

■ Even if we assume, *arguendo*, that Wharton was not a proper plaintiff under N.J.S.A. 42:2A–46(a), the receiver's crossclaim had the effect of substituting the proper plaintiff, an event which causes no prejudice to the defendants. *See Metro. Paving Co. v. Int'l Union of Operating Engineers*, 439 F.2d 300, 306 (10th Cir.), *cert. denied*, 404 U.S. 829, 92 S.Ct. 68, 30 L.Ed.2d 58 (1971); *Rowland v. Mutual Life Ins. Co. of New York*, 689 F.Supp. 793, 797–98 (S.D.Ohio 1988) (permitting relation back under 17(a) once plaintiff became real party in interest to avoid unjust result).[10]

### 2. Statute of Repose v. Statute of Limitations

■ The limited partners also allege that N.J.S.A. 42:2A–46(a) is not a statute of limitations, but a statute of repose which

10. The court also has the general power to align parties to reflect their true interests. *See Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941); *Employers Ins. of Wausau v. Crown Cork & Seal Co., Inc.*, 942 F.2d 862 (3d Cir.1991). Although the receiver was technically denominated a defendant in the original suit, its interests are clearly aligned with those

of the plaintiff, Wharton. Indeed, both the Opinion of July 8, 1993, and this opinion refer to the limited partners as "defendants"—because they are the real defendants. Even the caption of the appeal from the bankruptcy court decision misleadingly calls Wharton an appellee when it, along with the receiver, is truly an appellant.

proscribes the application of Rule 15(c). Limited Partners' Memorandum 18–19. They state that § 46(a) is "on its face, a repose statute of limitations." Limited Partners' Reply Brief at 13. We do not agree that § 46(a) is a statute of repose, nor do we agree that statutes of repose automatically bar relation back.

Some courts have distinguished between statutes of repose and statutes of limitations, generally stating that statutes of repose are absolute time bars that run from a fixed date readily determinable by the defendant unaffected by the personal circumstances of the plaintiff. *Caviness v. Derand Resources Corp.*, 983 F.2d 1295, 1300 n. 7 (4th Cir.1993); *see also Bradway v. American National Red Cross*, 992 F.2d 298, 301 (11th Cir.1993). This distinction primarily affects the application of various equitable tolling doctrines, such as discovery and fraudulent concealment, which delay the running of statutes of limitations. If the statute is deemed to be one of repose rather than one of limitations, the plaintiff may not employ equitable tolling. *See e.g., Bradway*, 992 F.2d 298, 301 (stating that Georgia's limitation on filing malpractice actions was a statute of repose not subject to tolling under the discovery doctrine); *First United Methodist Church v. U.S. Gypsum Co.*, 882 F.2d 862, 864–65 (4th Cir.1989) (holding that fraudulent concealment of injury did not toll statute of repose); *Tindol v. Boston Housing Authority*, 396 Mass. 515, 487 N.E.2d 488 (1986) (denying tolling for child plaintiff's minority).

New Jersey courts have also made the distinction between statutes of limitations and statutes of repose, but primarily with regard to one particular statute—N.J.S.A. 2A:14–1.1.[11] *See O'Connor v. Altus*, 67 N.J. 106, 335 A.2d 545 (1975); *Rosenberg v. North Bergen*, 61 N.J. 190, 293 A.2d 662

(1972); *Hopkins v. Fox & Lazo Realtors*, 242 N.J.Super. 320, 576 A.2d 921 (App.Div. 1990); *McCalla v. Harnischfeger Corp.*, 215 N.J.Super. 160, 521 A.2d 851 (App.Div. 1987) (stating that § 14–1.1 is "not a statute of limitations in the traditional sense; rather, it is a statute of repose conferring immunity 10 years after performance").

In *Rosenberg*, the plaintiff was injured when she caught a heel in a cracked street and fell. She sued the contractor that had originally paved the street, and its successor in interest, some 34 years after the work had been finished. Writing for the Supreme Court of New Jersey, Judge Mountain ruled that the suit was absolutely barred by the 10 year period provided in N.J.S.A. 2A:14–1.1, stating that the "time within which suit may be brought under this statute is entirely unrelated to the accrual of any cause of action.... The function of the statute is thus rather to define substantive rights than to alter or modify a remedy." 61 N.J. at 199, 293 A.2d at 666–67.

In reaching their conclusion, the *Rosenberg* court first noted that the New Jersey courts generally applied a liberal "discovery" rule when deciding the applicability of a statute of limitations. The court stated that this rule "fosters the just result of protecting those who have suffered injury," but at the cost of "necessarily prolong[ing] the exposure of wrongdoers." 61 N.J. at 197, 293 A.2d at 665. While the court expressed the view that a liberal discovery rule, as applied to construction cases, marked "an enlightened advance in the field of tort liability," it ruled that the adoption of the ten year period in § 14–1.1 was a legislative reaction to the risk of almost unending exposure for contractors,

---

**11.** N.J.S.A. 2A:14–1.1 provides, in part: No action whether in contract, in tort, or otherwise to recover damages for any deficiency in the design, planning, supervision or construction of an improvement to real property, or for any injury to property, real or personal, or for an injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property, more than 10 years after the performance or furnishing of such services and construction.

architects, and engineers. 61 N.J. at 198, 293 A.2d at 666.[12]

■ The determination that a statute of limitations is a statute of repose must be clear from either the plain language of the statute or the legislative intent, as in *Rosenberg. First United Methodist Church*, 882 F.2d at 865. Here, the language of § 46(a) is ambiguous, providing that a limited partner "is liable to the limited partnership for a period of one year thereafter for the amount of the returned contribution." *Cf. Bradway*, 992 F.2d 298 (examining malpractice statute which specifically stated that it was "intended to create a five-year statute of ultimate repose and abrogation").

On the other hand, the legislative history of § 46(a), while sparse, suggests an ordinary statute of limitations. Statements to New Jersey's limited partnership law from both the Senate Judiciary Committee, at 8 (1982), and the Assembly Judiciary, Law, Public Safety and Defense Committee, at 7 (1984), explain that § 46(a) "establishes a *statute of limitations* that allows a partnership to recover all or part of the return of a partner's contribution if the contribution is necessary to discharge the partnership's liability to its creditors." (emphasis added).

When the legislature enacted § 46(a), which became effective on April 1, 1985, the legislature was well aware from *Rosenberg* and its progeny of the distinction between statutes of limitations and statutes of repose, and equally aware of the various equitable tolling doctrines; however, the Senate and Assembly committee reports specifically referred to § 46(a) as a statute of limitations. While the present statute had the effect of shortening the applicable time limit for filing suit,[13] there is no legislative history of which the court is aware that would suggest a legislative intent to

eliminate equitable tolling or to create a statute of repose.

■ We also do not accept the assertion that calling a statute one of repose rather than limitations automatically proscribes relation back. Certainly nothing in the language of either Rule 15(c) or R. 4:9–3 suggests such a rule.

While several cases have held that in particular situations an amended pleading will not relate back to the complaint if the statutory bar is one of repose rather than limitations, these cases do not lead the court to conclude that there is an absolute bar to relating back when the statutory limitation is deemed to be one of repose. *See e.g., Tindol*, 487 N.E.2d 488; *Resolution Trust Corp. v. Olson*, 768 F.Supp. 283 (D.Ariz.1991).

In *Tindol*, a minor plaintiff was burned by excessively hot water furnished to a bathtub. After settling with the original defendants, the minor and her mother amended their pleading to add the architects and engineers who allegedly had negligently designed the hot water system, some eight years after the event. The Supreme Judicial Court of Massachusetts held that a six year statute of repose similar to N.J.S.A. 2A:14–1.1 would not be tolled for the child plaintiff's minority and that, therefore, plaintiffs' amended pleading seeking to add the architects and engineers as defendants would not relate back to the original complaint. 487 N.E.2d at 489–90.

*Olson* involved an Arizona statute which required a foreclosing plaintiff to bring a deficiency action within three months of the date on which the property is sold at foreclosure. The original loan had been made to a partnership and guaranteed personally by the Olsons. The foreclosure was completed on April 17, 1990, and the

---

**12.** We do not mean to suggest that N.J.S.A. 2A:14–1.1 is the only statutory time frame which the New Jersey Supreme Court might find to be a statute of repose. Each statute would have to be analyzed in terms of its express language, the length of the limitation, the nature of the action covered, and its legislative history to make this determination.

**13.** The predecessor to § 46(a) did not contain a limitation on the time for filing suit and we can find no authority indicating what limitation period would have been applied by the New Jersey courts to such an action. See Opinion, at 772 n. 10.

Olsons were sued exactly three months later. The original, and apparently timely, complaint contained deficiency language, but a subsequent amended complaint, filed before the Olsons were required to answer, eliminated the deficiency language. Six months after the event, Resolution Trust realized its error and tried to file a second amended complaint reinstating the deficiency claim. The Arizona District Court ruled that the three month limit was a statute of repose and that Rule 15(c) did not apply. 768 F.Supp. at 285.

Where relating back a new pleading would truly disturb the "repose" of the limiting statute, a refusal to allow relation back makes sense. *Tindol* was clearly such a case. To allow the amendment sought by the *Tindol* plaintiff would have dragged in as defendants strangers to the original litigation—architects and engineers who by then had reason to believe that repose was theirs to enjoy. To the extent that *Olson* or any other case might be construed as establishing an absolute bar to relation back in any case where the limiting statute is deemed to be one of repose, we are convinced that New Jersey has not and would not adopt such a rule.

The "chief consideration underlying [statutes of repose] is said to be fairness to a defendant." *Rosenberg*, 61 N.J. at 201, 293 A.2d at 667–68. The elements of fairness include not having to defend against stale claims and the security of knowing that past obligations have been wiped clean. *Id.* The same considerations underlying statutes of repose also apply to statutes of limitations. *See Jones v. Jones*, 242 N.J.Super. 195, 203, 576 A.2d 316, 320 (App.Div.1990); *Cockinos v. GAF Corp.*, 259 N.J.Super. 204, 208, 611 A.2d 1154, 1156 (Law Div.1992).

The fairness to the defendants in this case is unaffected by relation back. Not only were defendants named in the original complaint before the one year had expired, but the exact nature and scope of the claim were fully set forth in that pleading.[14] The later crossclaim by the receiver

sought no new relief, only the same return of the distributed capital to the partnership which had been demanded in Wharton's complaint. Defendants had neither the reality nor expectation of repose.

Even assuming, *arguendo*, that § 46(a) is a statute of repose, the outcome would remain unchanged. Statutes of repose are directed towards eliminating equitable tolling and other methods of extending limitations periods. Relation back of the receiver's crossclaim to the original complaint under R. 4:9–3, Fed.R.Civ.P. 15(c), or Rule 17(a) frustrates no legitimate policy behind statutes of repose or statutes of limitations.

This court finds that while controlling questions of law are involved in this appeal, there is insufficient ground either for a difference of opinion as to the correctness of the court's order of July 8, 1983, or for concluding that an interlocutory appeal would materially advance the ultimate termination of the litigation. The court declines to amend the order of July 8, 1993, to include the certification language required by 28 U.S.C. § 1292(b).

## B. Reconsideration

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. Where evidence is not newly discovered, a party may not submit that evidence in support of a motion for reconsideration." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985) (citing *De-Long Corp. v. Raymond Int'l Inc.*, 622 F.2d 1135, 1139–40 (3d Cir.1980), *overruled on other grounds by Croker v. Boeing Co.*, 662 F.2d 975 (3d Cir.1981)), *cert. denied*, 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986); *see also Singh*, 800 F.Supp. at 262. Here, defendants submit neither new evidence nor new facts to consider, and we do not find any errors of either law or fact. Accordingly, motion for reconsideration shall be denied.

14. See Opinion, at 775–777.

The court shall enter an appropriate order.